**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2022 MSPB 4**

Docket No. PH-1221-16-0010-W-1

**Garilynn Smith,**

**Appellant,**

**v.**

**Department of the Army,**

**Agency.**

April 13, 2022

Graig P. Corveleyn, Esquire, Hopewell, New Jersey, for the appellant.

Jason Guiliano, Picatinny Arsenal, New Jersey, for the agency.

**BEFORE**

Raymond A. Limon, Vice Chair
Tristan L. Leavitt, Member

**OPINION AND ORDER**

¶1      The agency has filed a petition for review of the initial decision, which granted the appellant's request for corrective action in this individual right of action (IRA) appeal.  For the reasons set forth below, we DENY the petition and AFFIRM the initial decision AS MODIFIED by this Opinion and Order, still granting corrective action.  We modify the initial decision by applying the clear and convincing evidence standard for nondisciplinary IRA cases set forth in *Gonzales v. Department of the Navy*, 101 M.S.P.R. 248, ¶¶ 11-12 (2006), and by directly addressing the second and third factors set forth in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

BACKGROUND

¶2      On July 17, 2006, the appellant's husband, a U.S. Army sergeant and explosive ordnance disposal technician, was killed in action in Iraq. Initial Appeal File (IAF), Tab 20 at 38; Hearing Transcript, Volume 1 (HT1) at 7, 18 (testimony of the appellant). Following her husband's death, the appellant attempted to obtain information about the disposition of his remains, which had been flown to Dover Air Force Base, where they were handled by Air Force Mortuary Affairs Operations (Dover MAO) personnel. HT1 at 29-39, 121 (testimony of the appellant). On April 21, 2011,[1] Dover MAO's Deputy Commander sent the appellant a letter stating that her husband's remains had been cremated, further incinerated by a medical disposal company, and sent to a Virginia landfill. IAF, Tab 20 at 39.

¶3      Shortly after receiving this information, the appellant notified the media and a policy advisor for U.S. Congressman Rush Holt about the mishandling of service members' remains by Dover MAO. *Id.* at 40; HT1 at 42, 48 (testimony of the appellant). On December 7, 2011, *The Washington Post* published an article about the matter that identified the appellant by name. IAF, Tab 8 at 22-26. The following week, Representative Holt delivered a speech in the U.S. House of Representatives in which he explained that he would not vote for the National Defense Authorization Act of 2012 (NDAA) because, inter alia, it did not mention the desecration of the remains of deceased service members at Dover MAO. IAF, Tab 21 at 59-60. In his speech, Representative Holt stated that the appellant had brought the matter to his attention. *Id.* at 60.

¶4      During this time, the appellant was working at the agency's Picatinny Arsenal (Picatinny) in New Jersey. IAF, Tab 4 at 19-20. The appellant served as

---

[1] Due to an apparent typographical error, the letter is dated April 21, 2008, rather than April 21, 2011. HT1 at 40-41 (testimony of the appellant).

a GS-08 Management Support Assistant with the Office of the Project Manager, Maneuver Ammunition Systems (PM MAS), at Picatinny from October 2010, until March 2012, when she transferred to the Naval Sea Systems Command. *Id.*; HT1 at 23 (testimony of the appellant). The appellant was unhappy with her new position, however, and sought to return to PM MAS. IAF, Tab 20 at 77-79; HT1 at 76 (testimony of the appellant). On July 24 and August 14, 2012, respectively, a PM MAS Management Services Specialist notified the appellant that a GS-09 Executive Assistant (EA) at PM MAS had taken another job and that a vacancy announcement for the position was forthcoming. IAF, Tab 20 at 70, 74; HT1 at 80 (testimony of the appellant). The agency issued the vacancy announcement on September 4, 2012. IAF, Tab 4 at 40-46.

¶5    The appellant applied for the position and was one of 14 candidates on the certificate of eligibles. IAF, Tab 6 at 33-37. Shortly after the vacancy announcement closed, two additional news reports were published about the landfill issue: (1) a September 23, 2012 article in *The Washington Post*, which identified the appellant by name, included a photograph of her at the landfill, and stated that she was instrumental in uncovering the scandal; and (2) a September 29, 2012 article in *The Army Times*, which also identified the appellant by name. IAF, Tab 23 at 5-14. In early October, the selecting official canceled the vacancy announcement. IAF, Tab 17 at 13.

¶6    On October 19, 2012, the agency posted a second vacancy announcement for the EA position, which included three additional duties. IAF, Tab 4 at 30-36, 38. The appellant applied for the position and was again placed on the certificate of eligibles; however, the selecting official chose another candidate for the position. IAF, Tab 6 at 28-32, Tab 21 at 158-59.

¶7    On January 11, 2013, the appellant filed a complaint with the Office of Special Counsel (OSC) alleging that she was not selected for the EA position in reprisal for her disclosures concerning the improper disposal of human remains

by Dover MAO. IAF, Tab 1 at 13-21. On August 4, 2015, OSC terminated its inquiry into her allegations and issued her a close-out letter and notice of Board appeal rights. *Id.* at 9-12.

¶8    The appellant timely filed this IRA appeal and requested a hearing. IAF, Tab 1. The administrative judge determined that the Board had jurisdiction over the appeal. IAF, Tab 11. Following a hearing, the administrative judge issued an initial decision granting the appellant's request for corrective action. IAF, Tab 47, Initial Decision (ID) at 1, 25. He found that the appellant proved by preponderant evidence that she made protected disclosures regarding Dover MAO's improper handling of her husband's remains, and that these disclosures were contributing factors in the agency's decision not to select her for the EA position. ID at 17-22. The administrative judge also concluded that the agency failed to prove by clear and convincing evidence that it would not have selected the appellant for that position in the absence of her protected disclosures. ID at 22-24.

¶9    The agency has filed a petition for review,[2] alleging that the administrative judge failed to properly admit evidence at the hearing, relied on "inadmissible" hearsay evidence in the initial decision, and improperly allowed the appellant to testify as an expert witness on mortuary affairs, yet denied the agency the opportunity to present a rebuttal expert witness. Petition for Review (PFR) File, Tab 3 at 5-16. The agency further alleges that the appellant failed to prove the contributing factor element of her whistleblower claim and that, in any event, it proved by clear and convincing evidence that it would not have selected the

---

[2] With its petition for review, the agency submits the hearing transcript in this appeal. Petition for Review (PFR) File, Tab 3 at 21-550. Because the transcript is already part of the record, IAF, Hearing Transcript, Volumes 1-2, it does not constitute new evidence. *See Meier v. Department of the Interior*, 3 M.S.P.R. 247, 256 (1980).

appellant for the EA position absent her disclosures. *Id.* at 16-20. The appellant has filed a response to the petition for review.[3] PFR File, Tab 6.

## ANALYSIS[4]

### The Board declines to dismiss the agency's petition for review for failure to comply with the administrative judge's interim relief order.

When, as here, the appellant was the prevailing party in the initial decision and the decision granted the appellant interim relief, any petition for review filed by the agency must be accompanied by a certification that the agency has complied with the interim relief order. 5 C.F.R. § 1201.116(a). The agency's failure to provide the required certification may result in the dismissal of the agency's petition for review. 5 C.F.R. § 1201.116(e).

In her response to the agency's petition for review, the appellant moves to dismiss the petition on the grounds that the agency has failed to provide interim

---

[3] On July 6, 2017, the day before the agency filed its petition for review, the appellant filed a "Motion for Enforcement of Interim Relief" with the Board's Northeastern Regional Office, alleging that the agency has failed to comply with the administrative judge's interim relief order. *Smith v. Department of the Army*, MSPB Docket No. PH-1221-16-0010-C-1, Compliance File (CF), Tab 1. The regional office docketed the motion as a petition for enforcement. *Id.* On August 17, 2017, the administrative judge issued an initial decision in the compliance matter stating that the appellant should have filed her petition for enforcement with the Clerk of the Board instead of the regional office because the agency had a petition for review of the initial decision pending before the Board. CF, Tab 5, Compliance Initial Decision (CID) at 3 (citing 5 C.F.R. § 1201.116). The administrative judge thus dismissed the petition for enforcement and forwarded it to the Clerk of the Board for joinder with the agency's petition for review. CID at 3. The initial decision became final on September 21, 2017, when neither party filed a petition for review. *Id.* at 4. We DENY the petition for enforcement because our regulations do not allow for a petition for enforcement of an interim relief order. *See Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 7 (2015); 5 C.F.R. § 1201.182(a)-(b).

[4] We have reviewed the relevant legislation enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.

relief as ordered by the administrative judge, and has failed to certify its compliance with the interim relief order. PFR File, Tab 6 at 5-6; *see* 5 C.F.R. § 1201.116(d). We agree with the appellant that the agency has failed to show that it has complied with the administrative judge's interim relief order. The agency's petition for review did not include a certification that the agency had complied with the interim relief order,[5] and the agency has not presented any evidence of compliance. Moreover, although it had the opportunity to do so, the agency did not reply to the appellant's response to the petition for review. Thus, it has not challenged the appellant's allegations that it failed to provide interim relief.[6]

¶12    Although the Board may dismiss an agency's petition for review if the agency fails to establish its compliance with the interim relief order, it need not do so. *Kolenc v. Department of Health & Human Services*, 120 M.S.P.R. 101, ¶ 11 (2013). We exercise our discretion in this case not to dismiss the petition for review because the issue of the agency's compliance with the interim relief order is now moot by virtue of our final decision ordering corrective action. *See Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 20 (2016).

---

[5] As the appellant notes on review, the agency does not mention interim relief in its petition for review. PFR File, Tab 6 at 6; *see generally* PFR File, Tab 1.

[6] Although the agency has not addressed the compliance issue, the record in the compliance matter indicates that the appellant returned to work with the agency as a GS-09 EA on August 7, 2017. CF, Tab 4. This does not demonstrate full compliance with the interim relief order, however, as the order directed the agency to appoint the appellant to the GS-09 EA position effective as of the date of the initial decision, i.e., May 19, 2017. ID at 1, 26.

The appellant made protected disclosures.

¶13    Under the Whistleblower Protection Enhancement Act, at the merits stage of the appeal, the appellant must prove by preponderant evidence[7] that she made a protected disclosure under 5 U.S.C. § 2302(b)(8), or engaged in activity protected by 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and that such disclosure or activity was a contributing factor in a personnel action taken against her. 5 U.S.C. § 1221(e)(1); *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015).   If the appellant meets that burden, the agency is given an opportunity to prove by clear and convincing evidence[8] that it would have taken the same personnel action absent the protected disclosure or activity.   5 U.S.C. § 1221(e)(1)-(2); *Lu*, 122 M.S.P.R. 335, ¶ 7.

¶14    A protected disclosure is a disclosure that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.   5 U.S.C. § 2302(b)(8)(A); *Parkinson v. Department of Justice*, 874 F.3d 710, 713 (Fed. Cir. 2017).   A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the Government evidence one of the categories of wrongdoing listed in section 2302(b)(8)(A).  *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999). The appellant need not prove that the matter disclosed actually established one of the types of wrongdoing listed under section 2302(b)(8)(A); rather, the appellant

---

[7] Preponderant evidence is "[t]he degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue." 5 C.F.R. § 1201.4(q).

[8] Clear and convincing evidence is "that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established." 5 C.F.R. § 1209.4(e).

must show that the matter disclosed was one which a reasonable person in her position would believe evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8). *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 18 (2013).

¶15    Following the hearing in this appeal, the administrative judge issued a close of record order directing the appellant to submit a brief addressing why she believed that her disclosure reported a type of wrongdoing listed in 5 U.S.C. § 2302(b)(8). IAF, Tab 37. In response, the appellant asserted that Dover MAO's practice of sending service members' remains to a landfill violated Department of Defense (DOD) Directive 1300.22, Mortuary Affairs Policy, paragraph 4.2, which provides that the remains of all military members "will be handled with the reverence, care, and dignity befitting them and the circumstances." IAF, Tab 39 at 20.

¶16    The administrative judge provided the agency the opportunity to respond to the appellant's brief, and it did so. IAF, Tabs 37, 45. In its post-hearing brief, the agency argued that the appellant did not make a protected disclosure because the DOD directive cited by the appellant does not clearly state that what occurred with the ashes in this case violated that directive or any law, policy, or regulation. IAF, Tab 45 at 5-6.

¶17    The administrative judge agreed with the appellant, and found that "dumping the ashes of [service members] into a landfill" fails to accord those remains the "reverence, care and dignity" required by the DOD directive. ID at 19-20. Therefore, the administrative judge found that the appellant made a protected disclosure by reporting conduct that violated this directive. ID at 18-20.

¶18    In the alternative, the administrative judge found that, even if Dover MAO did not violate the DOD directive, the appellant's disclosures were nonetheless protected because she established that she reasonably believed that Dover MAO

had committed some violation of law, rule, or regulation when it dumped portions of her husband's remains in a Virginia landfill. ID at 20-21. The administrative judge noted that all of the agency's managerial witnesses, including a U.S. Army Major General, testified that they were appalled to learn how the appellant's husband's remains had been handled, and Representative Holt also believed that Dover MAO had treated service members' remains in a most undignified manner. ID at 19-21. Based on this evidence and hearing testimony, the administrative judge found that a disinterested observer could reasonably conclude that the actions the appellant disclosed evidenced a violation of a law, rule, or regulation. ID at 21. Therefore, the administrative judge found, and we agree, that the appellant's disclosures are protected. *Id.*

The appellant proved contributing factor under the knowledge/timing test.

¶19 To prevail in an IRA appeal, an appellant also must prove by preponderant evidence that her protected disclosures were a contributing factor in a personnel action. *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 21 (2016). The term "contributing factor" means any disclosure that affects an agency's decision to threaten, propose, take, or not take a personnel action regarding the individual who made the disclosure. *Id.*; 5 C.F.R. § 1209.4(d). The most common way of proving the contributing factor element is the "knowledge/timing test." *Scoggins*, 123 M.S.P.R. 592, ¶ 21. Under that test, an appellant may prove the contributing factor element through evidence that the official taking the personnel action knew of the disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.* Once an appellant has satisfied the knowledge/timing test, she has demonstrated that a protected disclosure was a contributing factor in a personnel action. *Id.*

¶20 Regarding the knowledge prong of the test, the administrative judge found that the evidence presented at the hearing shows that Picatinny management

officials were aware of the appellant's disclosures since at least the spring of 2011.  ID at 21.  As for the timing prong of the test, the administrative judge found that the appellant's disclosures, and the news reports about those disclosures, continued until September 2012, i.e., approximately 1 month before the selecting official decided not to select the appellant for the EA position.[9]  *Id.*; *see Scoggins*, 123 M.S.P.R. 592, ¶ 25 (finding that a personnel action that occurs within 2 years of the appellant's disclosure satisfies the timing component of the knowledge/timing test).  Therefore, the administrative judge found, the appellant clearly satisfied the knowledge/timing test.  ID at 22.

¶21    The agency challenges this finding on review; however, it does not dispute that Picatinny management officials knew of the appellant's disclosures before they decided not to select her.  PFR File, Tab 3 at 16 (stating that the agency "freely admits" that it was aware of the appellant's alleged whistleblowing prior to the personnel action in question); IAF, Tab 24 at 4-5 (same).  It also does not dispute that the length of time between the appellant's disclosures and her nonselection was sufficiently short to satisfy the timing prong of the test.  PFR File, Tab 3 at 16-18.  The agency contends that the appellant nonetheless failed to prove contributing factor because the knowledge/timing test also "requires a reasonable person standard as to that knowledge being a contributing factor to the personnel action" and the appellant has not met that standard.  *Id.* at 16.

¶22    This argument is unpersuasive.  As previously indicated, once an appellant has satisfied the knowledge/timing test, she has met her burden of proving contributing factor.  *Scoggins*, 123 M.S.P.R. 592, ¶ 21.  The appellant clearly has

---

[9] Although it is unclear exactly when the agency decided not to select the appellant for the EA position, the agency contends that the appellant's nonselection occurred on or about October 31, 2012.  IAF, Tab 4 at 8.

satisfied that test, as it is undisputed that agency management officials knew of the appellant's whistleblowing disclosures and made the decision not to select her within a period of time sufficiently short to satisfy the knowledge/timing test. Under these circumstances, we agree with the administrative judge that the appellant proved that her protected disclosures were a contributing factor in her nonselection. ID at 21.

<u>The agency failed to show by clear and convincing evidence that it would have nonselected the appellant for the EA position absent her protected disclosures.</u>

¶23    When, as in this case, an appellant shows by preponderant evidence that she made protected disclosures and that those disclosures were a contributing factor in the decision to take a personnel action, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the personnel action in the absence of the whistleblowing. *See* 5 U.S.C. § 1221(e)(2); *Scoggins*, 123 M.S.P.R. 592, ¶ 26. In determining whether an agency has met its burden, the Board generally considers the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). Factor (1) does not apply straightforwardly to this case, however, as the personnel action at issue here is not disciplinary in nature, and therefore does not require supporting evidence of misconduct. *Gonzales*, 101 M.S.P.R. 248, ¶ 12. Instead, it is appropriate to consider instead the broader question of whether the agency had legitimate reasons for the appellant's nonselection. *Id.*; *see Schnell v. Department of the Army*, 114 M.S.P.R. 83, ¶¶ 17, 23 (2010) (applying *Gonzales* in adjudicating a nonselection for a temporary position). The U.S. Court of Appeals for the Federal Circuit has further clarified that "[e]vidence only clearly

and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

¶24  Regarding the first *Carr* factor, the administrative judge found that the agency's explanation for not selecting the appellant lacked credibility because it was "riddled with inconsistencies" and that the agency "utterly failed to justify its selection decision." ID at 23-24. In making this finding, the administrative judge noted that the selecting official and two other management officials testified during the hearing that the appellant was not suited for the EA position for the following reasons: (1) the appellant had problems getting along with coworkers; (2) she had "leave usage" issues; and (3) she frequently demanded teleworking arrangements. ID at 24. The administrative judge found that none of these reasons for refusing to select the appellant were supported by the evidentiary record. *Id.* In particular, the administrative judge found that the agency's claim that the appellant had trouble getting along with coworkers was directly contradicted by management in the appellant's 2010-2011 performance evaluation, as she received the highest possible rating under the category "Working Relationships & Communications." ID at 15, 24; IAF, Tab 22 at 89.

¶25  The administrative judge further noted that the appellant's second-line supervisor, who criticized the appellant's ability to work with other administrative assistants and cast doubt on her leadership ability during the hearing, praised the appellant's performance on her evaluation form. ID at 15. As the administrative judge noted, the supervisor stated in his Senior Rater comments that the appellant could be relied on to train and assist senior administrative assistants on various tasks, had the capability and desire to excel in positions well above the administrative level, and had outstanding potential to succeed in a position of higher authority and responsibility. ID at 15-16; IAF,

Tab 22 at 89. The administrative judge also found management's purported concern about the appellant's request for telework "an odd one," given that she made the request so that she could work for the agency while she was out on maternity-related sick leave, instead of being unable to make any work-related contributions during that time. ID at 14.

¶26 On review, the agency argues that, because the appellant was applying for a GS-09 position and the performance evaluation pertains to her performance in a GS-08 position, the administrative judge should have given less weight to the appellant's performance evaluation and more weight to the testimony of agency officials regarding their concerns about the appellant's potential for accomplishing GS-09 level work. PFR File, Tab 3 at 18. This argument is unpersuasive. If the appellant had difficulty getting along with others, that should have been reflected in her performance evaluation. Her excellent rating in all categories, including "Working Relationships & Communications," and the praise she received from agency management in her performance evaluation, severely undermine the legitimacy of the agency's reasons for its decision not to select her for the EA position. Accordingly, we agree with the administrative judge's assessment of the first *Carr* factor and find that the agency did not have legitimate reasons for not selecting the appellant.

¶27 We next consider the second *Carr* factor, the strength of any motive to retaliate on the part of any agency officials who were involved in the decision in question. As the administrative judge noted in the initial decision, although the appellant's protected disclosures exposed misconduct by personnel from the Department of the Air Force, rather than the Department of the Army, the evidence shows that the ramifications of the appellant's disclosures were not confined to the Air Force. ID at 22. For example, the record contains a December 6, 2011 email from a *Washington Post* reporter notifying the appellant of DOD personnel's reaction to a Facebook post in which she stated that an

article about Dover MAO would be published soon. IAF, Tab 23 at 299. In the email, the reporter states that the appellant "gave some DoD people a heart attack" and that DOD personnel were "really worried" about the upcoming article. *Id.* Thus, as the administrative judge found, the record shows that the appellant's disclosures were a source of anxiety for DOD personnel other than Air Force officials. ID at 22. Further, because Representative Holt decided not to vote for the NDAA of 2012, in part due to the appellant's disclosures, and the NDAA provides funding to all DOD agencies, those disclosures arguably jeopardized funding for every agency in DOD. *Id.*; IAF, Tab 21 at 59-60.

¶28        In evaluating the second *Carr* factor, we also have considered the court's decision in *Whitmore*, 680 F.3d at 1371, which cautioned the Board against taking an unduly dismissive and restrictive view of retaliatory motive. The *Whitmore* court stated that, "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees." *Id.* at 1370. Applying this broader view of retaliatory motive, the court has found that an official may have a retaliatory motive even if he is not "directly involved in the work at issue in an employee's disclosure." *Miller v. Department of Justice*, 842 F.3d 1252, 1261-62 (Fed. Cir. 2016). In another case, an agency official took a personnel action against a whistleblower employee, but that official was not personally implicated in the employee's disclosures, which concerned congressional testimony by a different agency official. The court determined that the Board's administrative judge erred by failing to consider whether the agency official who took the personnel action nonetheless had a "professional retaliatory motive" against the employee because his disclosures regarding the alleged inaccuracy of an agency Under Secretary's congressional testimony "implicated the capabilities, performance, and veracity of [agency]

managers and employees, and implied that the [agency] deceived [a] Senate Committee." *Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1008-09, 1018-19 (Fed. Cir. 2019).

¶29    In this matter, although none of the agency officials involved in the decision not to select the appellant was directly implicated in the mishandling of service members' remains, the misconduct the appellant disclosed was egregious and her disclosures generated a significant amount of negative publicity for the DOD. Given these circumstances, the appellant's disclosures reflected poorly on DOD officials as representatives of the general institutional interests of the DOD, which is sufficient to establish a retaliatory motive. *See Whitmore*, 680 F.3d at 1370; *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 69 (2011). We therefore find that the agency officials involved in the decision not to select the appellant had some motive to retaliate against her for her disclosures.

¶30    As for the third *Carr* factor, there is no record evidence concerning the agency's treatment of similarly situated nonwhistleblowers. As previously explained, it is the agency that bears the burden of proving that it would have taken the same action in the absence of the appellant's protected activity. *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 14 (2015). While the agency does not have an affirmative burden to produce evidence concerning each and every *Carr* factor, and "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis," the failure to produce such evidence if it exists "may be at the agency's peril," and "may well cause the agency to fail to prove its case overall." *Whitmore*, 680 F.3d at 1374-75. Moreover, because the agency bears the burden of proof at this stage of the analysis, when the agency fails to introduce relevant comparator evidence, the third *Carr* factor cannot favor the agency. *Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018). Here, the agency has

failed to proffer any evidence pertaining to *Carr* factor three. Under these circumstances, *Carr* factor 3 cannot weigh in the agency's favor.

¶31    We therefore find that the agency did not have legitimate reasons for its failure to select the appellant for the EA position, that the agency officials involved in the decision had some motive to retaliate, and that the agency's failure to provide evidence in support of *Carr* factor 3 does not favor the agency. Thus, we agree with the administrative judge that the agency failed to prove by clear and convincing evidence that it would have taken the same action absent the appellant's protected disclosures.[10]    ID at 24. We therefore agree with the administrative judge's determination that the appellant is entitled to corrective action. *Id.*

The agency's evidentiary arguments provide no basis to disturb the initial decision.

¶32    The agency also argues on review that the administrative judge did not follow "required evidentiary procedures" and erred in relying on documents that were not properly admitted as evidence during the hearing. PFR File, Tab 3 at 5, 7-11. In addition, the agency claims that the administrative judge improperly considered hearsay evidence, such as excerpts from Representative Holt's speech. *Id.* These arguments are unavailing, as it is well settled that strict adherence to the Federal Rules of Evidence and of Civil Procedure is not mandatory in administrative proceedings, *Crawford v. Department of the Treasury*, 56 M.S.P.R.

---

[10] Although the administrative judge did not explicitly address the second and third *Carr* factors in his analysis, we find it unnecessary to remand the appeal because resolution of the clear and convincing issue in this case does not require additional credibility determinations or further development of the record. *Cf. Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 37 (2013) (finding that the administrative judge was in the best position to reweigh the evidence on the clear and convincing issue because she was the one who heard the live testimony and made credibility determinations).

224, 233 (1993), and hearsay evidence is admissible in Board proceedings, *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 15 (2014).

¶33     The agency further argues on review that the administrative judge erred by allowing the appellant to testify as an expert in Air Force mortuary affairs policy, but not granting its post-hearing request to present rebuttal expert testimony from Dover MAO personnel familiar with the regulations at issue and the handling of remains by the Air Force. PFR File, Tab 3 at 11-16; IAF, Tab 45. The agency asserts that such testimony was necessary for the appellant to prove that Dover MAO's handling of service members' remains violated a law, rule, or regulation. PFR File, Tab 3 at 15.

¶34     An administrative judge has wide discretion to control the proceedings before him, to receive relevant evidence, and to ensure that the record on significant issues is fully developed. *See Tisdell v. Department of the Air Force*, 94 M.S.P.R. 44, ¶ 13 (2003); 5 C.F.R. § 1201.41(b). The hearing transcript shows that the appellant did not testify as an expert witness in mortuary affairs. Hearing Transcript, Volume 2 (HT2) at 517-26 (testimony of the appellant). Rather, the administrative judge merely questioned the appellant as to her knowledge of Dover MAO policy regarding the disposition of service members' remains. *Id.* at 519-26 (testimony of the appellant). This line of questioning was entirely appropriate and agency counsel did not object to it during the hearing. *Id.* Also, agency counsel had the opportunity to question the appellant about her testimony, but chose not to do so. HT2 at 526 (testimony of the appellant).

¶35     Further, even assuming that expert testimony was necessary for the appellant to establish that Dover MAO's mishandling of service members' remains violated a law, rule, or regulation, the absence of such testimony provides no reason to disturb the initial decision because it did not affect the outcome of the case. *See Karapinka v. Department of Energy*, 6 M.S.P.R. 124, 127 (1981) (explaining that an administrative judge's procedural error is of no

legal consequence unless it is shown to have adversely affected a party's substantive rights). As previously discussed, the appellant was not required to prove that a violation of law, rule, or regulation had occurred. Rather, she was required to prove that a disinterested observer could reasonably conclude that the actions of Dover MAO personnel evidenced a violation of a law, rule, or regulation. *Lachance*, 174 F.3d at 1381. Satisfying this standard did not require expert testimony.

The agency has failed to prove its allegation of judicial bias.

The agency also raises an apparent claim of bias on review, alleging that the administrative judge "was obviously sympathetic" to the appellant and was so outraged by the mishandling of her husband's remains that he decided to rule against the agency, regardless of the evidence. PFR File, Tab 3 at 5, 14. It further contends that, in the initial decision, the administrative judge engaged in a "shocking personal attack" on agency counsel when addressing the agency's argument in its post-hearing brief that, because DOD Directive 1300.22 does not specify what qualifies as the "requisite care, reverence, and dignity befitting [the remains] and the circumstances . . . what we have here is more of a philosophical or theological debate than anything else." *Id.* at 14.

Although the agency does not specifically identify the administrative judge's alleged "personal attack" on agency counsel, it appears to be referring to the following statement by the administrative judge in response to the above argument: "The agency should be disabused of the notion that a landfill is a dignified resting place for the remains of a U.S. Army Soldier who gave his life in the service of his nation." ID at 18. This statement is not a personal attack on agency counsel. Moreover, given the reprehensible manner in which Dover MOA personnel handled the remains of the appellant's husband and other service members, we find the administrative judge's statement to be a measured and reasonable response to the agency's appalling suggestion that dumping service

members' remains in a landfill could ever qualify as "the requisite care, reverence, and dignity befitting the remains and the circumstances."

¶38    Further, in making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980).  An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if his comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)); *Smets v. Department of the Navy*, 117 M.S.P.R. 164, ¶ 15 (2011), *aff'd per curiam*, 498 F. App'x 1 (Fed. Cir. 2012).  The agency's allegations on review, which do not relate to any extrajudicial conduct by the administrative judge, neither overcome the presumption of honesty and integrity that accompanies an administrative judge, nor establish that he showed a deep-seated favoritism or antagonism that would make fair judgment impossible.

## ORDER

¶39    We ORDER the agency to appoint the appellant to the position of Executive Assistant, GS-03019-09, at Picatinny Arsenal, New Jersey. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶40    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due,

and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶41 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶42 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶43 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

¶44 This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

**NOTICE TO THE APPELLANT
REGARDING YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT
REGARDING YOUR RIGHT TO REQUEST
CONSEQUENTIAL DAMAGES**

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. § § 1201.202, 1201.202 and 1201.204. If you believe you meet these requirements, you must file a motion for consequential damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE PARTIES**

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D). 5 U.S.C. § 1221(f)(3). Please note

that while any Special Counsel investigation related to this decision is pending, "no disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel." 5 U.S.C. § 1214(f).

## NOTICE OF APPEAL RIGHTS[11]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a

representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

/s/ for
_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

<u>Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:</u>

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1‑7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.