**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| DESIREE K. REEDUS, | DOCKET NUMBER |
| Appellant, | CH-1221-17-0411-W-2 |
| v. | |
| DEPARTMENT OF VETERANS AFFAIRS, | DATE: April 16, 2024 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

Heather White, Esquire, Washington, D.C., for the appellant.

Chadwick C. Duran and Danielle Kalivoda, Indianapolis, Indiana, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which denied her request for corrective action in this individual right of action (IRA) appeal. For the reasons discussed below, we GRANT the appellant's petition for review, AFFIRM the administrative judge's finding that the appellant established

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

a prima facie case of whistleblower reprisal, VACATE the administrative judge's finding that the agency proved by clear and convincing evidence that it would have taken the same actions in the absence of the appellant's protected disclosures, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

On May 3, 2015, the agency appointed the appellant to a position as a Physician in the Urgent Care Unit at the Marion Campus (Marion) of the agency's Northern Indiana Health Care System (NIHCS), subject to the completion of a 2-year probationary period. *Reedus v. Department of Veterans Affairs*, MSPB Docket No. CH-1221-17-0411-W-1, Initial Appeal File (IAF), Tab 11 at 38-39. The appellant initially reported directly to Marion's Medical Director of Primary Care (PC Director); however, following a series of confrontations between the appellant and the PC Director, NIHCS's then-Chief of Staff (COS) issued a memorandum on June 23, 2015, removing the PC Director from the appellant's chain of command. *Id.* at 45.

On July 22, 2015, the appellant notified NIHCS's then-Deputy Chief of Staff (Deputy)[2] that the PC Director was endangering patients by drastically reducing the dosage of their prescribed pain medication without tapering the dosage, causing at least one patient to suffer a seizure. IAF, Tab 22 at 4, 7-8.

In the fall of 2015, the agency hired an Associate Chief of Staff for Primary Care at Marion (ACOS), who became the appellant's immediate supervisor. *Reedus v. Department of Veterans Affairs*, MSPB Docket No. CH-1221-17-0411-W-2, Appeal File (W-2 AF), Hearing Transcript, Day 1 (HT1 at 48) (testimony of the appellant); Hearing Transcript, Day 2 (HT2) at 239 (testimony of the COS).

---

[2] The Deputy was appointed NIHCS's COS in 2016. *Reedus v. Department of Veterans Affairs*, MSPB Docket No. CH-1221-17-0411-W-2, Appeal File (W-2 AF), Hearing Transcript, Day 2 (HT2) at 237-38 (testimony of the COS). Accordingly, all references to him concerning events that occurred in 2016 or thereafter, including his hearing testimony, identify him as COS.

On July 19 and 20, 2016, the appellant sent emails to the ACOS and the COS concerning the protocol for responding to a "code blue"; i.e., a life-threatening emergency. IAF, Tab 9 at 139-40, 142-44; HT1 at 194-96 (testimony of the appellant's union representative). In her July 19 email, the appellant stated that, when she responded to a code blue in Marion's mental health ward the previous day, no other physician was present, hospital staff was not performing cardiopulmonary resuscitation correctly, and the patient subsequently died at the scene. IAF, Tab 9 at 142-43, Tab 18 at 20. The appellant asserted that Marion's floor staff must be trained to respond to emergencies, and that it was not "typical protocol" in an inpatient hospital to require the Urgent Care provider to leave her post unmanned and travel long distances to other parts of the facility to respond to emergencies when other providers in closer proximity to the patient could provide care. IAF, Tab 9 at 143.

In her July 20 email, the appellant alleged that hospital staff who responded to a code blue earlier that day did not follow the correct protocol for responding to emergencies, nor did they know the location of the carts that contained the equipment for responding to emergencies. *Id.* at 139-40.

On July 27, 2016, the ACOS placed the appellant on a Focused Personnel Practice Evaluation (FPPE), citing concerns that she was not properly using the Emergency Department Information System (EDIS), a management tool that all agency urgent care clinics and emergency departments must use to track patients and ensure that they receive the care that they need in a timely manner. IAF, Tab 12 at 5; HT2 at 281 (testimony of the COS).

On August 2, 2016, the ACOS issued the appellant an Ongoing Professional Practice Evaluation (OPPE), in which she concluded that the appellant did not meet "all defined criteria" for medical privileges. W-2 AF, Tab 26 at 119-21. In particular, the ACOS found that the appellant's interpersonal and communication skills were unsatisfactory for the following reasons: (1) the appellant did not call her supervisor when she was going to be

off work; (2) the appellant did not accept constructive feedback; and (3) the ACOS had "concerns about [the appellant's] relationship with [the PC Director]." *Id.* at 119. The ACOS also stated that there were concerns about the appellant's professionalism in front of staff and patients when the PC Director requested assistance from Urgent Care. *Id.* at 120.

On August 3, 2016, Marion's then-Acting Director (AD) notified the appellant that her medical privileges would be suspended effective August 4, 2016, at the COS's recommendation, pending review of allegations that she had failed to respond promptly to a code blue on July 20, 2016, and had refused to provide medical care to a veteran on July 28 and 29, 2016. IAF, Tab 11 at 29-30. Around the time that her medical privileges were suspended, the appellant began a period of approved leave protected under the Family and Medical Leave Act of 1993 (FMLA). IAF, Tab 17 at 18.

By memorandum dated August 31, 2016, the ACOS recommended to the COS that he consider convening a Physician Professional Standards Board (PSB) to determine whether the appellant's employment should be terminated during her probationary period. IAF, Tab 10 at 17-21. In support of her recommendation, the ACOS described several incidents–including the July 2016 incidents that led to the suspension of the appellant's medical privileges–in which the appellant allegedly failed to provide appropriate medical care to veterans in Urgent Care or failed to communicate professionally to staff, veterans, and family members. IAF, Tab 10 at 18-21, Tab 11 at 29-30. On September 7, 2016, the COS notified the appellant that a PSB would be convened to review eight alleged deficiencies in her performance and to make recommendations concerning her retention in the agency. IAF, Tab 8 at 16-18, Tab 11 at 18-20.

On November 7, 2016, the appellant notified NIHCS's Director that she would exhaust her FMLA leave on November 14, 2016, and she requested leave without pay (LWOP) from November 15 to December 15, 2016, the date of her next doctor's appointment. IAF, Tab 8 at 30-31. On November 9, 2016, the COS

denied the appellant's LWOP request on the grounds that she had failed to submit medical documentation supporting her claim of incapacitation from work. IAF, Tab 9 at 68. The COS also provided the appellant with a copy of NIHCS's Absence and Leave Policy, *id.* at 72-81, which states that an LWOP request must include supporting documentation, *id.* at 78.

On December 15, 2016, the ACOS issued a letter charging the appellant with absence without leave (AWOL) for the period from November 15 to 28 and November 30 to December 15, 2016, because she was absent from duty on those dates and did not have sufficient leave to cover her absence. *Id.* at 31, 50-58. The ACOS ordered the appellant to return to duty on the next duty date after she received the letter, *id.* at 31; however, the appellant did not do so, *id.* at 59-66.

On January 9, 2017, the Chairman of the PSB notified the appellant that she was being charged with AWOL from December 16, 2016, through January 6, 2017, because she had not reported for duty as instructed and had failed to provide sufficient medical documentation of her incapacity to work. *Id.* at 27-29. The PSB Chairman explained that a PSB would be convened on February 7, 2017, to consider this allegation, as well as the alleged deficiencies at issue before the previous PSB. *Id.*

On February 22, 2017, the PSB issued a report recommending the appellant's separation from duty based on her failure to report for duty as instructed and her AWOL status from November 15 to 28 and November 30 to the date of the report. *Id.* at 21-22. The Director concurred with the PSB's recommendation and issued the appellant a letter dated April 7, 2017, notifying her of his decision to remove her effective April 28, 2017, for unacceptable attendance. *Id.* at 16-17.

After exhausting her administrative remedies with the Office of Special Counsel (OSC), the appellant timely filed an IRA appeal with the Board on June 14, 2017, and requested a hearing. IAF, Tab 1.

On August 3, 2018, the administrative judge issued a detailed order identifying the disclosures and personnel actions over which the appellant had established Board jurisdiction. W-2 AF, Tab 25 at 7-9, 11. The administrative judge found that the Board had jurisdiction over the following four disclosures:

1) The PC Director's opioid prescription practices were endangering patients.[3]

2) After suspending her medical privileges on August 3, 2016, the COS ordered the appellant to perform work that was outside her scope of practice by directing her to brief the medical staff on safe opioid prescription practices and oversee the facility's drug management program.

3) (a) The agency required the appellant to respond to emergencies in other parts of the hospital when other doctors were available to do so. Consequently, on multiple instances, the appellant had to leave patients with relatively serious injuries or symptoms at Urgent Care to respond to emergencies elsewhere in the hospital due to inadequate physician staffing.

   (b) Hospital staff was not properly trained to respond to emergencies, such as cardiac arrest, and did not know the location of the carts that contained lifesaving medical equipment, or how to use the equipment on the carts.[4]

---

[3] The administrative judge found that the appellant made disclosure 1 to the Deputy in July 2015, to a Congresswoman in July 2016, and to the agency's Office of Inspector General (OIG) on an unspecified date. W-2 AF, Tab 25 at 7 (citing IAF, Tab 22 at 5-8).

[4] The administrative judge found that the appellant made disclosure 3 to the COS and the ACOS on January 8 and July 20, 2016, to a Congresswoman on August 20, 2016, and to the OIG on an unspecified date. W-2 AF, Tab 25 at 8 (citing IAF, Tab 17 at 16, Tab 25 at 4-5). The record shows that the appellant made this disclosure to the COS and the ACOS in her July 19 and 20, 2016 emails, IAF, Tab 25 at 4-5, 10-12; however, it does not support the administrative judge's finding that the appellant also made this disclosure to those individuals on January 8, 2016. Rather, the record indicates that, during a January 8, 2016 meeting with the ACOS, the appellant stated that too many patients were being sent to Urgent Care. IAF, Tab 10 at 18, 22; Tab 17 at 16. This error is of no consequence, however, as it has no effect on the outcome of this appeal. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (holding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

    4) The agency allowed veterans in Marion's Drug and Rehabilitation Unit to leave the hospital, drive to drug-infested neighborhoods, and return to the hospital with drugs, which they took in an attempt to overdose.

W-2 AF, Tab 25 at 7-9.

The administrative judge also determined that the appellant had established jurisdiction over a number of alleged personnel actions. *Id.* at 11 (citing IAF, Tab 17 at 10-11, 17-20; Tab 18 at 17-18, 20-22).

Following a hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action. W-2 AF, Tab 50, Initial Decision (ID) at 2, 31. The administrative judge found that disclosures 1 and (3)(b)[5] were protected, but that the other disclosures were not protected, ID at 3-10; and that the FPPE, the OPPE, the summary suspension of the appellant's medical privileges, the denial of her LWOP request, and the PSBs were covered personnel actions as defined in 5 U.S.C. § 2302(a)(2)(A), ID at 23-31, but that the other actions were not protected,[6] ID at 16-19. The administrative judge also found that the appellant proved by preponderant evidence that her protected disclosures to the ACOS and the COS were contributing factors in the covered personnel actions[7] under the knowledge/timing test, ID at 19-23; however, the

---

[5] As indicated above, the appellant's disclosure regarding the agency's response to emergencies consists of the following two allegations: (1) the appellant was required to respond to all emergencies throughout the hospital during her shift (disclosure (3)(a)); and (2) hospital staff was not properly trained to respond to emergencies (disclosure (3)(b)). W-2 AF, Tab 25 at 8. The administrative judge found that only the second allegation was a protected disclosure. ID at 20-21.

[6] The administrative judge found that the appellant failed to prove that the following alleged agency actions constituted personnel actions: a peer review; a hostile work environment; and assigning the appellant work that was outside the scope of her medical license. ID at 11-16, 18. Neither party has challenged these findings on review. Therefore, we have not further considered these alleged personnel actions. *See* 5 C.F.R. § 1201.115 (stating that the Board normally will consider only issues that are raised in a timely filed petition or cross petition for review).

[7] As noted above, the administrative judge found that: the appellant made disclosures 1 and (3)(b) to the COS (who was Deputy at the time of disclosure 1), the OIG, and a Congresswoman; and the appellant also made disclosure (3)(b) to the ACOS. ID at 3, 7. In evaluating whether the appellant proved the contributing factor element of her

agency proved by clear and convincing evidence that it would have taken the same personnel actions in the absence of the appellant's protected disclosures, ID at 23-31.

The appellant has filed a petition for review. *Reedus v. Department of Veterans Affairs*, MSPB Docket No. CH-1221-17-0411-W-2, Petition for Review (PFR) File, Tab 2. The agency has filed a response in opposition to the petition for review. PFR File, Tab 4.

## ANALYSIS

To establish a prima facie case of whistleblower retaliation, the appellant must prove by preponderant evidence that: (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).[8] 5 U.S.C. § 1221(e)(1); *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). If the appellant meets her burden, then the Board shall order corrective action unless the agency shows by clear and convincing evidence that it would

---

appeal, the administrative judge found that "[n]othing in the record indicates that [the COS] and [the ACOS] were aware of the appellant's disclosures to [the] Congresswoman . . . or to the OIG." ID at 20-21. The administrative judge also found that "the appellant's failure to specify the date she made the disclosures to the OIG makes it impossible to determine whether those disclosures were a contributing factor." ID at 21. Thus, the administrative judge found, in effect, that the appellant failed to prove that her disclosures to the Congresswoman and the OIG were contributing factors in the actions at issue in this appeal. The appellant has not challenged this implied finding, nor do we discern any reason to disturb it. To the extent that the administrative judge characterized the appellant's statements to the OIG as protected disclosures, without also recognizing that they were protected activities, we find any error harmless. *See Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8 (explaining that disclosures of information to an agency's OIG or to OSC generally are protected regardless of their content). The appellant was still required to prove contributing factor as to her statements to the OIG. *Id.*; *see Panter*, 22 M.S.P.R. at 282.

[8] The parties have not challenged the administrative judge's jurisdictional findings on review and we discern no basis to disturb them.

have taken the same personnel action in the absence of the protected disclosure and/or activity.  5 U.S.C. § 1221(e)(2); *Salerno*, 123 M.S.P.R. 230, ¶ 5.

The administrative judge correctly found that the appellant failed to prove by preponderant evidence that disclosure (3)(a) was protected.

A protected disclosure is any disclosure of information that the appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  5 U.S.C. § 2302(b)(8)(A); *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 18 (2013).  A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the Government evidence one of the categories of wrongdoing listed in section 2302(b)(8)(A).  *Chavez*, 120 M.S.P.R. 285, ¶ 18.  The appellant need not prove, however, that the matter disclosed actually established one of the covered types of wrongdoing.  *Id.*  Rather, the appellant must show that the matter disclosed was one which a reasonable person in her position would believe evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8).  *Id.*

As noted above, the administrative judge found that the appellant proved that disclosures 1 and (3)(b) were protected.  ID at 3-7, 9-10.  On review, the appellant only challenges the administrative judge's finding that disclosure (3)(a) was not protected.  PFR File, Tab 2 at 17-20.  Thus, we will limit our discussion to disclosure (3)(a)–that the agency required the appellant to respond to every emergency in the hospital that occurred during her shift.  IAF, Tab 25 at 11.

In assessing whether this disclosure was protected, the administrative judge considered the relevant documentary evidence and hearing testimony, including the appellant's testimony that, during the relevant time period, Marion had a shortage of physicians.[9]  ID at 7; HT1 at 7, 9 (testimony of the appellant);

---

[9] As the administrative judge found, the appellant's testimony contravenes her assertion that other doctors were available to cover emergencies.  ID at 8-9, W-2 AF, Tab 21 at 5.

PFR File, Tab 2 at 5. The administrative judge concluded that the appellant failed to prove specific facts that would support her alleged reasonable belief of a substantial and specific danger to public health or safety. ID at 7-9.

In her petition for review, the appellant reiterates her argument below that disclosure (3)(a) evidenced a substantial and specific danger to public health and safety. PFR File, Tab 2 at 17-20; W-2 AF, Tab 21 at 5, 7-9. Disclosures regarding danger to the public must be both substantial and specific to be protected. *Miller v. Department of Homeland Security*, 111 M.S.P.R. 312, ¶ 6 (2009). Factors to be considered in determining whether a disclosed danger is sufficiently substantial and specific to be protected include the likelihood of harm, when the alleged harm may occur, and the potential consequences of the harm. *Id*. Disclosure of an imminent event is protected, but disclosure of a speculative danger is not. *Id.*

Applying this standard, the administrative judge found that, although the appellant complained about the burdens imposed on her by the agency's decision to require her to use her medical expertise as an urgent care doctor to assist in emergencies, she did not allege that the decision posed a substantial and specific harm to public health or safety. ID at 8. The administrative judge also concluded that the appellant did not allege that the agency's decision to use her services in this manner falls into any other category of wrongdoing under 5 U.S.C. § 2302(b)(8).[10] *Id*. Therefore, the administrative judge found, the appellant

---

[10] The administrative judge concluded that, at best, the appellant's allegations in disclosure (3)(a) were disagreements as to the appropriate use of agency resources; however, mere policy disagreements with agency decisions are not protected disclosures. ID at 8 (citing *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 8 (2015)). We need not reach this finding, as we agree with the administrative judge that disclosure (3)(a) is not a protected disclosure because the allegations set forth therein do not fall into any category of wrongdoing under 5 U.S.C. § 2302(b)(8). *Webb*, 122 M.S.P.R. 248, ¶ 9 (emphasizing that if an employee has a reasonable belief that disclosed information evidences the kinds of misconduct listed in 5 U.S.C. § 2302(b)(8), rather than a policy disagreement, it is protected).

failed to establish that she reasonably believed that disclosure (3)(a) evidenced wrongdoing as defined in 5 U.S.C. § 2302(b)(8). ID at 9.

On review, the appellant argues that the administrative judge's finding is inconsistent with the Board's decision in *Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197 (2011), another IRA appeal filed by an agency physician. PFR File, Tab 2 at 17-20. In *Parikh*, the Board found that the appellant established that he reasonably believed that his disclosure of the following evidenced a substantial and specific danger to public health or safety: a physician failed to diagnose a patient's rectal abscess and sent him home with medication rather than refer him for proper surgical treatment; two patients who should have been accepted in the emergency room were improperly directed to the urgent care area, resulting in unjustifiable delays in their treatment; and one patient who should have been admitted to the intensive care unit was improperly placed on the general medical floor, resulting in the eventual deterioration of his condition to the point where he required intubation. *Parikh*, 116 M.S.P.R. 197, ¶¶ 12, 15.

The Board in *Parikh* found that the nature of the harm that could result from the issues that the appellant described in his disclosure was severe, as patients could die as a result of delayed treatment, misdiagnosis, or placement in lower levels of care with less monitoring than is appropriate for their conditions. *Id.*, ¶ 15. It further determined that delays in providing treatment and monitoring patients resulted in a high likelihood of harm to patients who required immediate treatment or careful monitoring and the potential for harm was imminent because it could occur within a matter of hours or minutes. *Id.* Therefore, the Board found that the appellant reasonably believed that this disclosure evidenced a substantial and specific danger to public health and safety. *Id.*, ¶ 18.

The appellant argues on review that, just as the appellant in *Parikh* reasonably believed that the misdiagnoses and misdirection of patients was a substantial threat to public health and safety, she reasonably believed that the

protocol requiring her to respond to all emergencies throughout the hospital posed a grave threat to her Urgent Care patients and to the patients who needed her help elsewhere on campus. PFR File, Tab 2 at 19-20. According to the appellant, "Whenever a code was called, [she] had to abandon any patient she was treating in order to respond to the code in another part of the hospital." *Id.* at 19. However, she does not identify any details as to the degree, likelihood, or timing of any potential harm to these patients. *Id.* Moreover, unlike the appellant in *Parikh*, who cited specific instances in which he reasonably believed the misdiagnosis and misdirection of patients could result in untimely and inadequate patient care, *Parikh*, 116 M.S.P.R. 197, ¶¶ 12, 17, in disclosure (3)(a), the appellant does not identify a particular situation in which the policy requiring her to respond to emergencies presented a specific and substantial harm to the patients she was allegedly forced to abandon. IAF, Tab 25 at 11.

The appellant asserts that the danger to patients as a result of the agency protocol is exemplified by the death of a patient on July 20, 2016.[11] *Id.* at 19-20. However, in her July 19, 2016 email, *id.* at 10-11, the appellant attributes the patient's death to the hospital staff's lack of proper training to respond to emergencies, i.e., the subject of disclosure (3)(b), not the protocol that is the subject of disclosure (3)(a). While the appellant characterizes the protocol as "not typical" for an inpatient hospital, she does not indicate that the protocol requiring her to respond to the code blue played any role in the patient's death.[12]

Based on our review of the record, we agree with the administrative judge that the appellant failed to establish by preponderant evidence that she reasonably believed that disclosure (3)(a) evidences wrongdoing as defined in 5 U.S.C.

---

[11] This date appears to be incorrect. Disclosure 3 involved code blues that occurred on July 18 and 20, 2016. IAF, Tab 25 at 4-5, 10-12. The patient who was the subject of the July 18 code blue died that day; however, the patient who was the subject of the July 20 code blue survived. Thus, the appellant seems to be referring to the death that occurred on July 18, 2016.

[12] Given the appellant's skills and experience as an Urgent Care Physician, the protocol arguably increased the patient's chances of surviving the code blue.

§ 2302(b)(8).    Therefore, we concur with the administrative judge that disclosure (3)(a) was not a protected disclosure.[13]  ID at 9.

<u>The appellant's disclosures were a contributing factor in the personnel actions.</u>

To prevail in an IRA appeal, an appellant must also prove by preponderant evidence that her protected disclosures were a contributing factor in a personnel action.  *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 21 (2016).  The term "contributing factor" means any disclosure that affects an agency's decision to threaten, propose, take, or not take a personnel action regarding the individual who made the disclosure.  *Id.*; 5 C.F.R. § 1209.4(d).  The most common way of proving the contributing factor element is the "knowledge/timing test."  *Scoggins*, 123 M.S.P.R. 592, ¶ 21.  Under that test, an appellant may prove the contributing factor element through evidence that the official taking the personnel action knew of the disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action.  *Id.*  The Board has held that a personnel action that occurs within 2 years of the appellant's disclosure satisfies the timing component of the knowledge/timing test.  *Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶¶ 21-23 (2013).  Once an appellant has satisfied the knowledge/timing test, she has demonstrated that a protected disclosure was a contributing factor in a personnel action.  *Scoggins*, 123 M.S.P.R. 592, ¶ 21.

The appellant argues on review that the administrative judge erred in concluding that her protected disclosures were not a contributing factor in the decision to suspend her medical privileges.  PFR File, Tab 2 at 22.  The appellant

---

[13] Although not recognized as such by the administrative judge, the appellant's alleged disclosure of this information to the OIG constitutes protected activity under 5 U.S.C. § 2302(b)(9)(C).  *See Fisher*, 2023 MSPB 11, ¶ 8.  Any error in this regard is harmless, however.    As previously discussed in connection with disclosure 3(b), the administrative judge implicitly found that the appellant failed to prove that her disclosures to the OIG were contributing factors in the actions at issue in this appeal.  The appellant has not challenged this implied finding, and we discern no reason to disturb it.  *See Panter*, 22 M.S.P.R. at 282.

has apparently misread the initial decision. The administrative judge correctly found that the appellant's protected disclosures were a contributing factor in the personnel actions still at issue in this appeal (including the suspension of the appellant's medical privileges) based on the knowledge/timing test. ID at 20-23 (finding that the appellant made her protected disclosures to the ACOS and/or the COS between July 22, 2015, and July 20, 2016, and that all five personnel actions at issue in this appeal were initiated by either the COS or the ACOS between July 27 and September 7, 2016).

<u>The appeal must be remanded for a new determination as to whether the agency proved by clear and convincing evidence that it would have taken the same personnel actions absent the appellant's protected disclosures.</u>

Because the appellant met her burden to establish a prima facie case of whistleblowing, the agency had the opportunity to prove by clear and convincing evidence that it would have taken the same personnel actions in the absence of the appellant's whistleblowing. *See Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, ¶ 16 (2012). In determining whether an agency has met this burden, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Id.* In assessing whether the agency has met its burden, the Board must consider all the pertinent evidence in the record and it must not exclude or ignore countervailing evidence by only looking at the evidence that supports the

agency's position. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

Although the administrative judge correctly stated in the initial decision that the Board considers the *Carr* factors in determining whether the agency has presented clear and convincing evidence of its non-retaliatory reasons for taking a personnel action, ID at 23, we find that she did not adequately address those factors in concluding that the agency met this burden of proof. ID at 23-31. Even though the record is complete, we find that the administrative judge is in the best position to conduct a new clear and convincing analysis because she heard the testimony and made credibility determinations. *See Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶¶ 37-38 (2013); ID at 15. Therefore, we find it appropriate to vacate the administrative judge's finding that the agency proved by clear and convincing evidence that it would have taken the same actions in the absence of the appellant's protected disclosures and remand this appeal for a new clear and convincing analysis consistent with the guidance set forth below. *See Shibuya*, 119 M.S.P.R. ¶¶ 1, 37-38.

<u>*Carr* factor 1: the strength of the agency's evidence in support of its action.</u>

In the initial decision, the administrative judge does not state that she considered the first *Carr* factor in determining whether the agency met its clear and convincing burden, much less how much weight she afforded it. ID at 24-31. On remand, the administrative judge shall make explained findings regarding the strength of the agency's evidence in support of each of the personnel actions at issue in this appeal. She shall also state whether this factor favors the appellant or the agency and the weight she is affording this factor. In making these findings as to each action, the administrative judge should address both the evidence supporting her conclusions and the countervailing evidence. *Whitmore*, 680 F.3d at 1368.

*Carr* factor 2: the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision to take the action.

The administrative judge did not make any findings regarding the second *Carr* factor in determining that the agency met its clear and convincing burden regarding the personnel actions at issue in this appeal, with the exception of the suspension of the appellant's medical privileges. ID at 24-31. As for her analysis of this factor in conjunction with that personnel action, the administrative judge found that, although the COS and the ACOS "played important roles" in the suspension, the AD ordered the suspension and he did not have a motive to retaliate against the appellant because nothing in the record indicates that he knew of the appellant's protected disclosures or that his decision to suspend the appellant's medical privileges was influenced by those aware of the appellant's disclosures. ID at 27. However, in determining whether the appellant's protected disclosures were a contributing factor in the suspension of the appellant's medical privileges, the administrative judge found that the suspension was "invoked" by the COS, who recommended this course of action to the AD. ID at 22.

Not only does the administrative judge's finding that the COS did not influence the AD's decision to suspend the appellant's medical privileges directly contradict her previous finding that the COS invoked the suspension, but it also is not supported by the record. As observed above and in the initial decision, in his August 3, 2016 letter notifying the appellant that her medical privileges would be suspended, the AD expressly stated that he was taking this action based on the COS's recommendation. ID at 21 (citing IAF, Tab 24 at 15). Given these circumstances, we find that the COS–who was aware of both protected disclosures–influenced the decision and therefore, any motive to retaliate on the part of the COS is imputed to the AD. *See Phillips v. Department of Transportation*, 113 M.S.P.R. 73, ¶ 21 (2010) (explaining that, when applying the second *Carr* factor, the Board will consider any motive to retaliate on the part of

the agency official who ordered the action, as well as any motive to retaliate on the part of other agency officials who influenced the decision). Thus, in evaluating the second *Carr* factor on remand as it pertains to the suspension of the appellant's medical privileges and any other action at issue in which the COS was involved, the administrative judge should consider the COS's motive to retaliate.

Further, we have found that "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures . . . as the criticism reflects on them in their capacities as managers and employees." *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶ 65 (quoting *Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012)); *Smith v. Department of the Army*, 2022 MSPB 4, ¶¶ 28-29 (same). Thus, in evaluating the second *Carr* factor on remand, the administrative judge should address whether the appellant's disclosures reflected poorly on the responsible agency officials in their capacities as managers and employees. *See Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶¶ 69, 71 (2011) (finding that the managers who proposed and decided to remove an appellant had a motive to retaliate because, in pertinent part, the appellant's disclosures reflected on them as representatives of the general institutional interests of the agency).

*Carr* factor 3: any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

In determining that the agency met its clear and convincing burden, the administrative judge made only two findings that are relevant to the third *Carr* factor. ID at 23-31. First, as to the suspension of the appellant's medical privileges, the administrative judge found that the agency summarily suspended the medical privileges of other physicians, including the ACOS, who were not whistleblowers. ID at 28.

Second, as to the FPPE, the administrative judge addressed the appellant's argument that, "while other physicians failed to use [the] EDIS, she was the only one subjected to an FPPE." ID at 24. Based on the COS's testimony that all other physicians who provided emergency care at Marion were contractors, the administrative judge rejected this argument on the grounds that the agency could not take any personnel actions against contractors. *Id.* In other words, while not explicitly stating that she was addressing the third *Carr* factor, the administrative judge found, in essence, that there was no evidence that any agency employees were similarly situated to the appellant.

"[T]he absence of evidence relating to *Carr* factor three can effectively remove that factor from the analysis." *Whitmore*, 680 F.3d at 1374; *see Runstrom v. Department of Veterans Affairs*, 123 M.S.P.R. 169, ¶ 18 (2016) (finding that, due to lack of evidence that there were any employees similarly situated to the appellant, the third *Carr* factor was not significant for the analysis of that case). However, if either or both of the first two *Carr* factors do not support a finding that the agency would have taken the same personnel action absent the disclosure or protected activity, the agency's failure to present evidence of the third *Carr* factor may prevent it from carrying its overall burden. *Smith*, 2022 MSPB 4, ¶¶ 26-30; *see also Miller v. Department of Justice*, 842 F.3d 1252, 1259-63 (Fed. Cir. 2016).

The administrative judge did not state how she weighed the absence of comparator evidence pertaining to the FPPE in her *Carr* factor analysis, ID at 24, nor did she address whether the agency presented any comparator evidence regarding the OPPE, the PSBs, and the denial of the appellant's LWOP request. ID at 25-26, 28-31. On remand, for each personnel action at issue in this appeal, the administrative judge shall consider whether the agency presented evidence that there were no similarly situated employees to the appellant, or whether the agency did not present any evidence on the issue of similarly situated employees.

In sum, on remand, the administrative judge shall conduct a new *Carr* factor analysis and determine whether the agency proved by clear and convincing evidence that it would have taken each of the personnel actions at issue in this appeal in the absence of the appellant's protected disclosures. *See Agoranos*, 119 M.S.P.R. 498, ¶¶ 29-33 (ordering the administrative judge to conduct a new *Carr* factor analysis on remand due to the deficiency of her original analysis). In making this determination, the administrative judge must fully evaluate all of the pertinent evidence as required by *Whitmore*, 680 F.3d at 1368-74, explicitly address all three *Carr* factors, determine the weight to afford to each factor, and make credibility determinations in order to resolve any contradictory testimony. *See, e.g.*, *Massie v. Department of Transportation*, 118 M.S.P.R. 308, ¶ 8 (2012) (remanding the appeal for the administrative judge to reconsider the record evidence and make detailed findings consistent with the guidance provided by the court in *Whitmore*).

<u>The Board lacks jurisdiction over the appellant's remaining claims.</u>

Lastly, the appellant reiterates her argument from below that the agency did not allow her to review the evidence upon which it relied in suspending her medical privileges and convening the PSBs. PFR File, Tab 2 at 13, 25-26; IAF, Tab 15 at 9. The Board does not have jurisdiction to consider such claims in the context of an IRA appeal. *See Hugenberg v. Department of Commerce*, 120 M.S.P.R. 381, ¶ 24 (2013) (explaining that the appellant's arguments that the agency denied him due process and committed harmful procedural error may not be heard in the context of his IRA appeal).

## ORDER

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this remand order.

FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.