**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2024 MSPB 18**

Docket No. DE-1221-18-0335-W-2

**Janie Young,**

**Appellant,**

v.

**Department of Homeland Security,**

**Agency.**

December 10, 2024

Jeffrey H. Jacobson, Esquire, Tucson, Arizona, for the appellant.

Joey Ann Lonjers, Esquire, Long Beach, California, for the agency.

Gregory J. Martin, Esquire, Tucson, Arizona, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and did not participate
in the adjudication of this appeal.

**OPINION AND ORDER**

¶1     The appellant has filed a petition for review of the initial decision, which denied corrective action in her individual right of action (IRA) appeal. For the reasons set forth below, we GRANT the petition for review, REVERSE the initial decision's denial of corrective action as to the appellant's 15-day suspension, and ORDER corrective action in connection therewith. In so doing, we reaffirm and apply the Board's analysis in whistleblower appeals involving a claim that a

report of misconduct or an ensuing investigation was retaliatory, as set forth in *Russell v. Department of Justice*, 76 M.S.P.R. 317 (1997).

BACKGROUND

¶2      During the time period relevant to this appeal, the appellant was employed as a GS-15 Supervisory Field Operations Specialist with Customs and Border Protection and served as Chief of Staff to the Commander of the Joint Task Force West (JTFW) in Tucson, Arizona. *Young v. Department of Homeland Security*, MSPB Docket No. DE-1221-18-0335-W-1, Initial Appeal File (IAF), Tab 16 at 39, 354; *Young v. Department of Homeland Security*, MSPB Docket No. DE-1221-18-0335-W-2, Appeal File (W-2 AF), Tab 25 at 1. The JTFW Commander was the appellant's first-line supervisor. IAF, Tab 16 at 354; W-2 AF, Hearing Transcript Day 1 (HT-1) at 82 (testimony of the appellant). The appellant was the first-line supervisor for a special assistant and a mission support specialist. IAF, Tab 16 at 354; HT-1 at 89 (testimony of the appellant).

¶3      According to the appellant, in April 2016, she was made aware that the special assistant who reported to her had continuously failed to include her in communications between the special assistant and senior agency leadership, despite previous directives to include the appellant in all such communications. HT-1 at 94-97 (testimony of the appellant). As a result, she instructed the special assistant to draft a memorandum discussing how the communication issue could be remedied. IAF, Tab 10 at 4, 15-17; HT-1 at 97 (testimony of the appellant). The special assistant directly approached the Commander about the situation, who removed the special assistant from the appellant's supervision, admonished the appellant, and ordered the appellant to identify the individual who had provided the information to her concerning the special assistant's communications. IAF, Tab 10 at 4-5, 22, 37-38, Tab 16 at 351-52; W-2 AF, Tab 9 at 28-29; HT-1 at 97-102 (testimony of the appellant). The appellant refused to disclose from whom she had learned about the special assistant's communications, contending

that the individual who had disclosed the communications was a whistleblower. W-2 AF, Tab 9 at 28-29; HT-1 at 98, 101-02 (testimony of the appellant).

¶4      On May 18, 2016, the appellant filed two complaints with the Office of Special Counsel (OSC) concerning the Commander's actions as set forth above. IAF, Tab 10 at 19-35. These complaints concerned the Commander's verbal admonishment of the appellant for insubordination for failing to obey his order to disclose the name of the employee who had informed the appellant of the communication issues with the special assistant, and further alleged that the Commander showed improper favoritism toward the special assistant by reassigning her to another supervisor instead of having her comply with the appellant's instructions. *Id.* The appellant similarly reported the Commander's alleged wrongdoing to the agency's Office of Inspector General (OIG) through the Joint Intake Center (JIC). *Id.* at 40-43. On May 20, 2016, the appellant provided the Commander with a memorandum apprising him that she felt that, among other things, he had committed prohibited personnel practices by ordering her to disclose the name of her subordinate employee who informed her of the special assistant's communications. *Id.* at 37-38.

¶5      Two months later, in July 2016, the mission support specialist over whom the appellant was the first-line supervisor filed an equal employment opportunity (EEO) complaint naming the Commander as the responsible management official. IAF, Tab 16 at 85-106, 128; W-2 AF, Tab 18 at 69-70, Tab 25 at 1; HT-1 at 137, 141 (testimony of the mission support specialist).[1] The EEO complaint alleged that the Commander had improperly temporarily reassigned the mission support specialist to the agency's Policy and Compliance Division and denied her training in retaliation for her involvement in the matter set forth above.[2] IAF, Tab 16

---

[1] Although the EEO complaint is not in the record, it is undisputed that the Commander was named as the responsible management official.

[2] The record suggests that the mission support specialist was the employee who informed the appellant about the communications issues with the special assistant. W-2 AF, Hearing Transcript Day 2 (HT-2) (testimony of the Commander).

at 85. On August 15, 2016, the appellant served as the management official in an EEO mediation of the mission support specialist's complaint. W-2 AF, Tab 25 at 1. Although the appellant and the mission support specialist arrived at a proposed settlement, which included a noncompetitive promotion and training, the proposed settlement required the approval of a higher-level official before it could become effective. W-2 AF, Tab 18 at 13. After learning of the EEO complaint and the appellant's involvement as the agency official representing management, the Commander informed the Diversity and Civil Rights Officer (DCRO) that the Deputy Commissioner of the agency did not approve the settlement agreement. IAF, Tab 16 at 142.

¶6        On August 29, 2016, the Commander contacted the OIG/JIC alleging that the appellant had improperly served as the management official in the August 15, 2016 mediation because she did not inform him of the EEO complaint or discuss with him whether to engage in mediation, as he had previously instructed. IAF, Tab 16 at 128. He further alleged that the appellant's participation in the mediation constituted a conflict of interest because the appellant was a personal friend of the mission support specialist and appeared to be using the EEO process to obtain training and a promotion for the mission support specialist in circumvention of agency rules.

¶7        In response to the Commander's OIG/JIC complaint, the Office of Professional Responsibility (OPR) conducted an investigation and issued an administrative inquiry report. IAF, Tab 16 at 108-26. Thereafter, on August 30, 2017, a member of the discipline review board proposed the appellant's removal based on the charges of an appearance of a conflict of interest, failure to follow supervisory instructions, and lack of candor. *Id.* at 75-78. After affording the appellant an opportunity to respond orally and in writing, the deciding official issued a decision sustaining the appearance of a conflict of interest and failure to follow supervisory instructions charges, but not the lack of candor charge. *Id.* at 41-45, 47-57. The sustained charges were based on the appellant's actions in

serving as the management official in the mission support specialist's EEO mediation. *Id.* at 42, 75-76. The deciding official mitigated the proposed penalty to a 15-day suspension. *Id.* at 43. During the pendency of these disciplinary proceedings, the Commander was replaced,[3] and the new Commander issued the appellant a memorandum on February 12, 2018, laterally reassigning her to the position of Director of the Targeting Assessment Program for JTFW. *Id.* at 35.

¶8    On July 2, 2018, the appellant filed an IRA appeal with the Board alleging that the agency's decisions to suspend her for 15 days and reassign her constituted reprisal for her protected disclosures and protected activity. IAF, Tab 1. She also argued that the OPR investigation that led to these actions was initiated in reprisal for her whistleblowing activity. After holding the appellant's requested hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action.[4] W-2 AF, Tab 30, Initial Decision (ID). The administrative judge found that the appellant met her burden of proving by preponderant evidence that she made a protected disclosure and engaged in protected activity that was a contributing factor in the agency's decisions to suspend and reassign her. ID at 8-12. He went on to find that the agency proved by clear and convincing evidence that it would have suspended and reassigned her absent her protected disclosure and protected activity. ID at 12-19. In making these findings, the administrative judge did not address whether the investigation that led to the appellant's suspension and reassignment was retaliatory.

---

[3] At or around the time the agency proposed the appellant's removal, the Commander was selected by the Secretary of the Department of Homeland Security to be the Director of the JTFW in San Antonio, Texas, and he transferred out of the Tucson, Arizona location. HT-2 at 162-63 (testimony of the Commander).

[4] Prior to the issuance of the initial decision on the merits of the appellant's whistleblower reprisal claim, the administrative judge ruled that the appellant made the requisite jurisdictional showing for the appeal to proceed to a hearing on the merits. IAF, Tab 17 at 1. This conclusion necessarily included a finding that the appellant had exhausted her administrative remedy with OSC. *See* IAF, Tab 10 at 87. Neither party has challenged the existence of Board jurisdiction.

¶9    The appellant has filed a petition for review.  Petition for Review (PFR) File, Tab 9.  The agency has responded to the appellant's petition for review, and the appellant has filed a reply.  PFR File, Tabs 13-14.

ANALYSIS

<u>We agree with the administrative judge that the appellant established a prima facie case of whistleblower reprisal regarding her protected activities.</u>

¶10    At the merits stage of an IRA appeal, an appellant must prove by preponderant evidence that she made a protected disclosure under 5 U.S.C. § 2302(b)(8) or engaged in an activity protected by 5 U.S.C. § 2303(b)(9)(A)(i), (B), (C), or (D), and that such a disclosure or activity was a contributing factor in an agency's personnel action.  5 U.S.C. § 1221(e)(1); *Smith v. Department of the Army*, 2022 MSPB 4, ¶ 13.  If the appellant meets that burden, then the agency is given an opportunity to prove by clear and convincing evidence that it would have taken the same personnel action absent the protected disclosure or activity.  5 U.S.C. § 1221(e)(1)-(2); *Smith*, 2022 MSPB 4, ¶ 13.

¶11    On petition for review in this appeal, neither party challenges the administrative judge's finding that the appellant proved by preponderant evidence that she engaged in protected activity when she filed two complaints with OSC and a third complaint with the OIG/JIC.[5]  PFR File, Tabs 9, 13-14; ID at 8.  We

_____

[5] The administrative judge acknowledged that the OSC and OIG/JIC complaints are protected regardless of their content, but he nonetheless proceeded to analyze the content of the complaints because he found that "the protected nature" of the complaints is relevant to the agency's burden to show that it would have taken the personnel actions in the absence of the protected disclosures or activity.  ID at 8-9.  He concluded that "a reasonable person in the appellant's position could believe that [the Commander] was violating the [whistleblower protection statutes] by requiring her to disclose" the identity of the person who informed her of the special assistant's failure to include the appellant on written communications.  ID at 9.  However, he found that the portion of the appellant's disclosure relating to the alleged impropriety of the Commander reassigning the special assistant was not protected because the appellant failed to show that the Commander lacked the authority to reassign subordinates.  ID at 10.  On review, the appellant challenges the latter finding.  PFR File, Tab 1 at 15-17.  We need not address whether this portion of the appellant's disclosure was protected under section 2302(b)(8) because, as explained by the administrative judge, the activity of

agree with the administrative judge's finding. 5 U.S.C. § 2302(b)(9)(C); *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 62. The parties also do not challenge that the 15-day suspension and reassignment are personnel actions covered under the whistleblower protection statutes, and we discern no error in that regard. PFR File, Tabs 9, 13-14; ID at 11; *see* 5 U.S.C.§ 2302(a)(2)(A)(iii), (iv); *Johnson v. Department of Justice*, 104 M.S.P.R. 624, ¶ 7 (2007). Finally, there is no dispute on review that the appellant established by preponderant evidence that her protected activity was a contributing factor in the personnel actions discussed above because both the proposing and deciding officials admitted that they were aware of the appellant's protected activity and both actions occurred within approximately 18 months of the protected activity. PFR File, Tabs 9, 13-14; ID at 11-12; *see Smith*, 2022 MSPB 4, ¶ 19 (explaining that an appellant can establish the contributing factor element through the knowledge/timing test). In sum, we find that the appellant established her prima facie case of whistleblower reprisal by preponderant evidence.

<u>The appellant also established a prima facie case of whistleblower reprisal regarding the OPR investigation.</u>

¶12        Because the appellant met her burden of establishing a prima facie case of whistleblower reprisal, the administrative judge considered whether the agency proved by clear and convincing evidence that it would have suspended and reassigned the appellant absent her protected activity. ID at 12-19; *see* 5 U.S.C. § 1221(e)(1)-(2); *Smith*, 2022 MSPB 4, ¶ 13. He focused his analysis exclusively on the deciding official's decision to suspend the appellant for 15 days and the new Commander's decision to reassign her following the prior Commander's departure. ID at 12-19. Ultimately, he concluded that the agency

---

filing an OSC or OIG complaint is protected under section 2302(b)(9)(C) regardless of the complaint's content. *See Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 62 (stating that disclosing information to an OIG or OSC is protected activity under section 2302(b)(9)(C) irrespective of whether an individual had a reasonable belief that she was disclosing wrongdoing and regardless of the complaint's contents).

met its clear and convincing evidence burden. ID at 13, 19. Therefore, he denied corrective action. ID at 19.

¶13 On review, the appellant argues that the administrative judge erred in his analysis because he failed to consider any motive to retaliate on the part of the prior Commander in reporting the appellant's alleged misconduct for investigation, which ultimately led to the personnel actions at issue. PFR File, Tab 9 at 20-22, Tab 14 at 5-7. In response, the agency asserts that the appellant waived any claim concerning the retaliatory nature of the investigation because, during the prehearing conference, she confirmed that she was not asserting that the investigation itself was a personnel action. PFR File, Tab 13 at 21-22. For the reasons discussed below, we find the agency's argument unavailing.

¶14 In *Spivey v. Department of Justice*, 2022 MSPB 24, ¶¶ 10-12, we reiterated that an investigation generally is not a personnel action under 5 U.S.C. § 2302(a)(2)(A) unless it creates circumstances that rise to the level of a significant change in duties, responsibilities, or working conditions under 5 U.S.C. § 2302(a)(2)(A)(xii). *See Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 955 (Fed. Cir. 2020). However, in *Russell v. Department of Justice*, 76 M.S.P.R. 317, 323-24 (1997), the Board's seminal case on retaliatory investigation claims, we found it appropriate to consider evidence regarding the conduct of an agency investigation when the investigation was so closely related to the personnel action that it could have been a pretext for gathering information to retaliate against an employee for whistleblowing activity. *See Johnson*, 104 M.S.P.R. 624, ¶ 7; *Geyer v. Department of Justice*, 70 M.S.P.R. 682, 688 (1996), *aff'd*, 116 F.3d 1497 (Fed. Cir. 1997) (Table). Thus, although the appellant indicated during the prehearing conference that she was not asserting that the investigation was, itself, a separate personnel action, there is nothing in the record suggesting that she waived the general claim that the Commander initiated the investigation in reprisal for her protected activity. Accordingly, we discuss that claim here.

¶15      In determining whether an investigation was so closely related to a personnel action that it could have been a pretext for gathering evidence to retaliate against an employee for whistleblowing activity, the Board will examine the origins of the investigation. *Mangano v. Department of Veterans Affairs*, 109 M.S.P.R. 658, ¶ 38 (2008); *Russell*, 76 M.S.P.R. at 323-24. Regarding the 15-day suspension, the two sustained charges—appearance of a conflict of interest and failure to follow supervisory instructions—arose from the findings of the OPR investigation, which undisputedly was initiated by the Commander's complaint to the OIG/JIC. IAF, Tab 16 at 41-42, 75-76, 108-26, 128. As discussed previously, the Commander was the sole subject of the appellant's OSC and OIG/JIC complaints regarding his handling of the communications issue involving the special assistant. IAF, Tab 10 at 19-35, 37-38, 40-43. Because the suspension action was based on the findings of the OPR investigation, and because the Commander initiated the OPR investigation and also was the subject of the appellant's protected activity, we find that the OPR investigation was so closely related to the appellant's suspension that it could have been a pretext for gathering evidence to retaliate.[6] *See Mangano*, 109 M.S.P.R. 658, ¶ 44 (concluding that investigations were so closely related to the charged misconduct supporting the appellant's removal that the investigations could have been a pretext for gathering evidence used to retaliate against the appellant for

---

[6] Regarding the reassignment, however, the new Commander testified that he reassigned the appellant to the Director of Targeting position because there was a need in the region to refocus targeting efforts from marijuana interdiction to alien smuggling and that the appellant's prior experience in targeting would make her an asset in that role. HT-1 at 226-29 (testimony of the new Commander). He further testified that he was aware of the appellant's suspension, but that it played no role in his decision to reassign her, and that he regularly reassigned staff as necessary for mission purposes. HT-1 at 209, 235-36 (testimony of the new Commander). We also note that the new Commander was not the subject of the appellant's whistleblowing activity. Accordingly, we find that the OPR investigation was not so closely related to the decision to reassign the appellant that it could have been a pretext for gathering evidence to retaliate against her. We therefore deny the appellant's request for corrective action on this claim.

whistleblowing when, among other reasons, one of the investigations was convened by the agency official who was the subject of the appellant's whistleblowing); *Russell*, 76 M.S.P.R. at 324 (finding that an investigation was so closely related to the personnel action that it could have been a pretext for gathering evidence to retaliate when the charges forming the basis for the action were the direct result of the investigation).

¶16    When, as here, an appellant has shown by preponderant evidence that an investigation is so closely related to a personnel action that it could have been a pretext for gathering evidence to retaliate, the Board will consider evidence regarding the investigation—more specifically, it will analyze the factors set forth in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999), as they relate to any report of misconduct and any ensuing investigation that led to a personnel action—in determining whether the agency has met its clear and convincing evidence burden.[7]  *Russell*, 76 M.S.P.R. at 323-24, 326-28; *see Marano v. Department of Justice*, 2 F.3d 1137, 1142 (Fed. Cir. 1993) (determining that, "[s]o long as a protected disclosure is *a* contributing factor to the contested personnel action, and the agency cannot prove its affirmative defense, no harm can come to the whistleblower").  That the investigation itself is conducted in a fair and impartial manner, or that it uncovers actionable misconduct, does not relieve an agency of its obligation to show by clear and

---

[7] In *Russell*, 76 M.S.P.R. at 324, the Board also stated that, when an investigation is so closely related to a personnel action that it could have been a pretext for gathering evidence to retaliate, "and the agency does not show by clear and convincing evidence that the evidence would have been gathered absent the protected disclosure," then the appellant will prevail on an affirmative defense of reprisal for whistleblowing.  This statement, which is not supported in the decision by any legal authority, is inconsistent with the standard set forth at 5 U.S.C. § 1221(e)(2).  It is also inconsistent with the rest of the *Russell* decision, which does not address whether the agency showed by clear and convincing evidence that the evidence would have been gathered absent the protected disclosure or activity, but instead analyzes whether the agency showed by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure.  *Russell*, 76 M.S.P.R. at 326-28.  The statement is, therefore, dicta and will not be followed.

convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure or protected activity. *See* 5 U.S.C. § 1221(e)(2); *Russell*, 76 M.S.P.R. at 324.

¶17    This approach discourages the use of "selective investigations" as a retaliatory tool and, as we previously explained in *Russell*, is supported by the Civil Service Reform Act of 1978 (CSRA), Pub. L. No. 95-454, 92 Stat. 111 (1978), and the Whistleblower Protection Act of 1989 (WPA), Pub. L. No. 101-12, 103 Stat. 16 (1989). *Russell*, 76 M.S.P.R. at 325 (explaining that the CSRA assures Federal employees that "they will not suffer if they help uncover and correct administrative abuses," and that one of the goals of the WPA was to "encourage [G]overnment personnel to blow the whistle on wasteful, corrupt, or illegal [G]overnment practices without fearing retaliatory action by their supervisors or those harmed by the disclosures") (internal citations omitted)). Since we decided *Russell* in 1997, Congress passed the Whistleblower Protection Enhancement Act (WPEA) in 2012. Pub. L. No. 112-199, 126 Stat 1465. The Senate Report for the WPEA acknowledged the "harassing character" of retaliatory investigations and that, in declining to add them to the list of qualifying personnel actions out of fear of chilling routine investigations, it "create[d] an additional avenue for financial relief once an employee is able to prove a claim under the WPA, if the employee can further demonstrate that an investigation was undertaken in retaliation" for a protected disclosure or protected activity. S. Rep. No. 112-155, at 20-21 (2012); *see Sistek*, 955 F.3d at 954. In doing so, the drafters of the WPEA specifically confirmed their intent that the Board's seminal decision in *Russell* would remain the "governing law" following the enactment of the WPEA. S. Rep. No. 112-155, at 21; *see Sistek*, 955 F.3d at 955. Pursuant to the CSRA, WPA, and WPEA, we reaffirm our approach to retaliatory investigations as set forth in *Russell*.

¶18    In considering evidence of a retaliatory investigation, we acknowledge the well-established principle that the whistleblower protection statutes are not

intended to shield employees who engage in wrongful conduct merely because they also have engaged in whistleblowing activity. *See Marano*, 2 F.3d at 1142 n.5 (citing 135 Cong. Rec. 5033 (1989)); *O'Donnell v. Department of Agriculture*, 120 M.S.P.R. 94, ¶ 14 (2013), *aff'd per curiam*, 561 F. App'x 926 (Fed. Cir. 2014); *Russell*, 76 M.S.P.R. at 325. That same principle must apply to investigations; thus, to be clear, an employee's protected disclosures or activities do not preclude an agency investigation of the employee.[8]

¶19        However, that a finding of reprisal results in an outcome in the appellant's favor despite proven misconduct is not an unfamiliar concept in the law. Our approach to retaliatory investigation claims is similar to our approach in adverse action appeals when an appellant proves discrimination or retaliation claims pursuant to, among other provisions, Title VII of the Civil Rights Act of 1964. In such cases, we reverse the adverse action even when the agency proves the charged misconduct. *See, e.g.*, *Durden v. Department of Homeland Security*, 108 M.S.P.R. 539, ¶¶ 8-9, 14 (2008) (finding that, despite the agency meeting its burden of proof with respect to the charged misconduct, the appellant's removal action could not be sustained because she established an affirmative defense of sex discrimination); *Creer v. U.S. Postal Service*, 62 M.S.P.R. 656, 658-64 (1994) (finding that the appellant's removal could not be sustained despite the agency proving its charge of insubordination/failure to follow instructions when the appellant established a prima facie case of sex discrimination and the agency failed to articulate a legitimate, nondiscriminatory reason for its adverse action). When an employee has engaged in misconduct, she is not completely shielded from the consequences of her misconduct by anti-discrimination/retaliation laws or the whistleblower protection statutes. *See Russell*, 76 M.S.P.R. at 325. Rather,

---

[8] The WPEA Senate report noted the concern that "legitimate and important agency inquiries–including criminal investigations, routine background investigations for initial employment, investigations for determining eligibility for a security clearance, IG investigations, and management inquiries of potential wrongdoing in the workplace–not be chilled by fear of challenge and litigation." S. Rep. No. 112-155, at 21.

those laws shield an employee only to the extent that the record supports a finding that she would not have been disciplined except for her status as a whistleblower or membership in a protected class. *Id.*; *Creer*, 62 M.S.P.R. at 658-64.

¶20 The consideration of evidence of an alleged retaliatory investigation does not undermine Congress's conclusion, or the U.S. Court of Appeals for the Federal Circuit's and the Board's case law, that a retaliatory investigation does not constitute an independently actionable personnel action under the whistleblower protection statutes. Rather, our decision in *Russell*, and Congress's subsequent reliance on it, require the Board to consider alleged retaliatory investigations as a part of its evaluations of an underlying personnel action. *See Sistek*, 955 F.3d at 957; S. Rep. No. 112-155, at 21.

The agency failed to prove by clear and convincing evidence that it would have initiated an investigation of the appellant absent her whistleblowing activity.

¶21 To prevail in a whistleblower reprisal case, that is, one in which an appellant alleges that agency officials retaliated against her for whistleblowing by taking or failing to take, or threatening to take or fail to take, a personnel action covered under 5 U.S.C. § 2302(a)(2)(A), the agency must show by clear and convincing evidence that it would have taken or failed to take the personnel action absent the protected disclosure or activity. 5 U.S.C. §§ 1221(e), 2302(b)(8); *Carr*, 185 F.3d at 1322; *Smith*, 2022 MSPB 4, ¶ 23. In determining whether the agency has met its burden, the Board generally considers the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate by the agency officials involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr*, 185 F.3d at 1323; *Smith*, 2022 MSPB 4, ¶ 23.

¶22 When an appellant raises a claim of an alleged retaliatory investigation, and the initiator of the investigation is a supervisor or management official who was the subject of the appellant's protected disclosure or protected activity, the Board

must assess the *Carr* factors somewhat differently.[9]  In considering *Carr* factor one—the strength of the agency's evidence in support of the action, the Board will consider the strength of the evidence that the agency official had when reporting or initiating the investigation, rather than the evidence that was discovered as a result of the report or investigation.[10]  *See Russell*, 76 M.S.P.R. at 326.  Regarding *Carr* factor two, the Board will consider the motive to retaliate on the part of the official who reported the misconduct or initiated the investigation.  *Id.* at 326-27.  Relevant evidence may include whether the official was the subject of the appellant's whistleblowing activity or a resulting investigation, whether the official suffered any consequences as a result of that activity, whether the official knew about the activity when making the report or initiating the investigation of the appellant, and how soon after the whistleblowing or protected activity the report of misconduct or initiation of an

---

[9]  A distinction exists between reports of misconduct or investigations initiated by a supervisor or management official and reports of misconduct or investigations initiated by coworkers or other individuals.  When the individuals who reported the misconduct or initiated the investigation are not supervisory or management officials, no claim of a retaliatory investigation by the agency may be established.  *See Carr*, 185 F.3d at 1326.  By contrast, when, as here, the individual initiating the investigation is a management official, we must consider whether the initiation of the investigation was retaliatory.  *See Russell*, 76 M.S.P.R. at 325.

[10]  This is similar to the established principle in cases involving claims of reprisal for protected disclosures and activities that the relevant inquiry is what the management official knew at the time of the personnel action.  *Schneider v. Department of Homeland Security*, 98 M.S.P.R. 377, ¶ 19 (2005); *Ray v. Department of the Army*, 97 M.S.P.R. 101, ¶ 23 (2004), *aff'd*, 176 F. App'x 110 (Fed. Cir. 2006) (Table).  It follows that, because the purpose of an investigation is to uncover facts, just as the agency's personnel action cannot be based on information obtained through a retaliatory investigation, an investigation cannot be deemed retaliatory merely because a management official's concerns were not borne out during a subsequent investigation.  An agency need not wait to investigate reasonable allegations of employee misconduct until the misconduct becomes more severe or obvious.  *Cf. Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 27 (explaining that an agency does not have to tolerate inappropriate conduct of a sexual nature until it becomes so pervasive and severe that it exposes the agency to liability under the equal employment opportunity statutes); *Lentine v. Department of the Treasury*, 94 M.S.P.R. 676, ¶ 13 (2003) (same).

investigation began.[11]  *Id.*  Finally, when considering *Carr* factor three, the Board will assess whether the relevant officials reported or initiated investigations against similarly situated employees who were not whistleblowers.[12]  *Id.* at 327.

¶23        An appellant's decision to raise a claim of a retaliatory investigation does not foreclose raising a claim of whistleblower reprisal based on the personnel action that is closely related to the investigation.  Thus, an appellant may pursue a claim of reprisal for having made a protected disclosure or engaged in protected activity, a claim that she was subjected to a retaliatory investigation, or both claims simultaneously.  *Cf. Wilson v. Small Business Administration*, 2024 MSPB 3, ¶¶ 12, 19 (holding that an appellant may attempt to prove a claim of discrimination under the motivating factor and but-for causation methods simultaneously, and may choose to show but-for causation under the pretext

---

[11] In considering the second *Carr* factor for allegations of reprisal for protected disclosures and activities, applicable precedent requires that we consider whether the management officials involved may have had a professional motive to retaliate. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012) (finding that those responsible for the agency's overall performance may be motivated to retaliate against a whistleblower because, even if they are not directly implicated by the disclosures, the criticism reflects on them in their capacities as managers and employees); *see Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019-20 (Fed. Cir. 2019) (considering the possible presence of a professional motive to retaliate based on the appellant's criticism of an agency Under Secretary); *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶ 65.  The Board also has applied the "cat's paw" theory to the second *Carr* factor in whistleblower reprisal matters, under which a particular management official, acting because of an improper animus, influences another agency official who is unaware of the improper animus when implementing a personnel action.  *Karnes v. Department of Justice*, 2023 MSPB 12, ¶ 19.  We find that these principles also may apply, when appropriate, to our analysis of the second *Carr* factor when considering retaliatory investigations.

[12] The failure to produce evidence related to the third *Carr* factor cannot weigh in the agency's favor and may cause it to fail to meet its clear and convincing burden. *Whitmore*, 680 F.3d at 1374; *Semenov v. Department of Veterans Affairs*, 2023 MSPB 16, ¶ 42.  The Board has recognized, however, that there may be situations in which the agency produces persuasive evidence that there are no comparators, and in such situations, the third *Carr* factor would be removed from the analysis.  *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 18 n.9.  We find that these same principles may apply, when appropriate, to an analysis of the third *Carr* factor when considering retaliatory investigations.

framework and mixed-motive framework simultaneously). When an appellant chooses to raise both a whistleblower reprisal claim based on the personnel action that follows the investigation and a retaliatory investigation claim in the same appeal, a separate and distinct *Carr* factor analysis may be necessary to eliminate any confusion that might flow from a commingling of the claims. Because the only claim now before us is that the investigation was initiated in reprisal for the appellant's protected whistleblowing activity, we need not engage in such a bifurcated analysis here.[13]

¶24      In sum, we hold that, when an appellant makes a claim that the personnel actions at issue are the result of a retaliatory investigation, the Board must first consider whether the appellant established by preponderant evidence that the investigation is so closely related to the personnel action that it could have been a pretext for gathering evidence to retaliate. If the Board finds in the affirmative, it will consider the *Carr* factors as they relate to the report of alleged misconduct and initiation of an investigation. If the agency fails to show by clear and convincing evidence that it would have reported the alleged misconduct or initiated the investigation in the absence of the appellant's protected disclosure or protected activity, then the appellant must prevail on her whistleblower reprisal claim and is entitled to corrective action with respect to the resulting personnel action. *Russell*, 76 M.S.P.R. at 327-28 (ordering the agency to cancel the appellant's demotion that resulted from a retaliatory report of misconduct and subsequent investigation).

---

[13] In the initial decision, the administrative judge considered whether the agency proved by clear and convincing evidence that it would have suspended the appellant for 15 days and reassigned her in the absence of her protected whistleblowing activity. ID at 12-19. On review, the appellant argues that the administrative judge erred in analyzing the strength of the agency's evidence in support of the 15-day suspension as it relates to the charge of failure to follow instructions because the instruction was not sufficiently clear, given that it failed to account for situations like those present in this case. PFR File, Tab 9 at 13-15. We need not address this argument because it concerns solely whether the agency would have suspended the appellant in the absence of her whistleblowing activity, and we are already ordering corrective action on that personnel action as a result of the appellant's retaliatory investigation claim.

*Carr Factor 1*

¶25     Turning to the facts before us, we first consider the strength of the evidence that the Commander had before him when he reported the appellant's misconduct that led to the investigation. *See Russell*, 76 M.S.P.R. at 326. To reiterate, the Commander reported the appellant to the OIG/JIC on August 29, 2016, for "insubordination, failure to follow instructions, conflict of interest, and attempting to use the EEO process to circumvent hiring rules." IAF, Tab 16 at 128. In his report and request for investigation, he indicated that he learned of the appellant's involvement in the mediation on August 24, 2016, when the DCRO contacted him. *Id.* He further stated that the appellant's decision to serve as the management official representing the agency at the mediation ignored his prior instruction to bring mediation requests in EEO matters to his attention first and, further, that he had concerns that the appellant's personal relationship with the mission support specialist constituted a conflict of interest. *Id.* At the hearing, the Commander testified that, prior to the appellant's involvement in the mediation, he had given instructions to first approach him for discussions about whether, and if so how, the agency would mediate an EEO complaint. HT-2 at 137-40, 153 (testimony of the Commander). The appellant does not dispute that she was given these instructions. HT-1 at 205 (testimony of the appellant). Additionally, the Commander testified that the mission support specialist and the appellant were friends, in addition to having a supervisor/subordinate relationship, and that the appellant was also the mission support specialist's mentor and had tried to arrange a training opportunity and noncompetitive promotion for her in the recent past, which were included as terms of the proposed settlement agreement. HT-2 at 146, 154 (testimony of the Commander). Thus, he was aware of the potential conflict of interest in the appellant serving as the agency representative in a mediation with the mission support specialist. Accordingly, the Commander had support for his allegations before he filed the report and requested an investigation into the appellant's actions.

¶26    Nonetheless, a proper analysis of the agency's burden in this regard requires that all of the evidence be weighed together—both the evidence that supports the agency's case and the evidence that detracts from it. *Whitmore v. Department of Labor*, 680 F.3d at 1353, 1368 (Fed. Cir. 2012); *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 37 (2013). With respect to the Commander's allegation of the appellant's failure to follow his instruction to discuss with him any EEO mediation request before the agency agreed to proceed, the record establishes that his instruction did not include any specific direction on how to proceed when the Commander himself was the subject of the EEO complaint, which was the situation in this matter. HT-2 at 139 (testimony of the Commander). Indeed, the appellant testified that she did not first approach the Commander, pursuant to his instruction, because the EEO process is a "protected process" designed to ensure confidentiality and informing the subject of the EEO complaint would have a "chilling effect" on future reporting. HT-1 at 208 (testimony of the appellant). Further, the deciding official testified that having the agency official alleged to have discriminated or retaliated against an employee in the chain of decision making with respect to whether the agency should mediate might "in and of itself create a conflict or the appearance of a conflict." HT-1 at 54-55 (testimony of the deciding official).

¶27    The record is unclear as to when the Commander became aware that he was the subject of the EEO complaint. The appellant testified that they met when he learned of her handling of the mediation to discuss the circumstances of the mediation. HT-1 at 126 (testimony of the appellant). At that meeting, she informed him that he was the named official in the EEO complaint and that she did not believe it was appropriate to approach him for approval. *Id.* at 126-27. However, we are unable to discern from the record when this meeting occurred, and specifically, whether it occurred before or after the Commander reported the appellant and requested an investigation into her actions.

¶28    Regarding the Commander's allegation that the appellant's involvement in the mediation as the management official presented a conflict of interest, the record shows that the agency had no policy at the time regarding who could serve as a management official in an EEO mediation and, specifically, no policy regarding whether a first-level supervisor or even a mentor could serve as the management representative against the subordinate/mentee. HT-1 at 52-53, 206 (testimony of the deciding official and the appellant). Further, the record shows that, before agreeing to serve as the management official for the EEO mediation, the appellant confirmed with the DCRO that she, as the mission support specialist's first-line supervisor, could serve as management official. IAF, Tab 16 at 246; HT-1 at 194-95 (testimony of the appellant). Additionally, the appellant testified at the hearing that, throughout the course of the mediation process, she attempted to contact at least four other agency officials to discuss whether her serving as the management official would be appropriate. HT-1 at 197-204 (testimony of the appellant).

¶29    The record does not establish whether the Commander was aware of the lack of a specific agency policy regarding who could serve as a management official in an EEO mediation or whether he knew of the DCRO's approval at the time he reported the appellant's alleged misconduct. Nor does the record show whether the Commander was aware of the appellant's efforts to obtain approval to serve as the management official. Accordingly, after weighing all of the evidence, we conclude that the Commander had evidence to report the appellant and request an investigation into her alleged misconduct. This factor favors the agency, but not to a strong degree.

### Carr Factor 2

¶30    Turning to *Carr* factor two—the motive to retaliate on the part of the official or officials who made the report or initiated the investigation—the Commander admitted during the hearing that, when he reported the appellant and requested an investigation, he was aware of her complaints to OSC and the

OIG/JIC. HT-2 at 155 (testimony of the Commander). Additionally, the Commander was, himself, the subject of those complaints. IAF, Tab 10 at 19-35, 37-38, 40-43. Such circumstances generally suggest a strong motive to retaliate. *See Russell*, 76 M.S.P.R. at 326 (concluding that agency officials had a strong motive to retaliate when they were the subject of the appellant's protected disclosure and protected activity and were aware of the protected disclosure and protected activity when they made their reports about the incidents that formed the basis of the charged misconduct); *see also Karnes v. Department of Justice*, 2023 MSPB 12, ¶¶ 14, 33; *Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 45 (2016) (finding a strong motive to retaliate when the deciding official was the subject of a prior settlement agreement involving the appellant).

¶31    Moreover, the appellant filed the OSC and OIG/JIC complaints and made her disclosure to the Commander in May of 2016, and less than 3 months later, in August 2016, the Commander reported the appellant and requested an investigation into her conduct. IAF, Tab 10 at 19-35, 37-38, 40-43, Tab 16 at 128. The appellant's disclosure to the Commander informed him that she had filed complaints with OSC and the OIG/JIC; thus, he was aware of those complaints almost immediately. Such close temporal proximity between the appellant's protected activity/disclosure and the Commander's decision to report the appellant further evinces his motive to retaliate. *See Russell*, 76 M.S.P.R. at 326. Additionally, the Commander testified at the hearing that he was upset about the appellant's language in the disclosure memorandum. HT-2 at 160-61 (testimony of the Commander). As set forth above, it is unclear whether the Commander was aware of the lack of a specific agency policy regarding who could serve as a management official in an EEO mediation or whether he knew of the DCRO's approval of that activity. An agency's failure to investigate a charge sufficiently before bringing an action might indicate an improper motive. *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 30 (2011). Similarly, we find that a failure to undertake sufficient factual inquiries before reporting

potential misconduct or initiating an investigation may indicate an improper motive.

¶32    Nonetheless, we acknowledge that the record establishes that the Commander did not suffer any negative consequences as a result of the appellant's OSC and OIG/JIC complaints against him and, to the contrary, he was moved to a different position that required a higher level of responsibility following a selection by the Secretary of the Department of Homeland Security. HT-2 at 162 (testimony of the Commander). That the Commander did not suffer any negative consequences from the appellant's complaints, though, does not diminish the considerable amount of evidence suggesting a strong motive to retaliate. Accordingly, this factor weighs heavily against the agency.

*Carr Factor 3*

¶33    Turning to the third *Carr* factor, which considers whether the agency reported misconduct or initiated investigations into similarly situated nonwhistleblowers, the Commander testified at considerable length regarding the incidents at issue here, yet he provided no testimony regarding whether he reported another employee who was not a whistleblower and who engaged in the same or similar conduct as the appellant. Nor has the agency put forth any evidence to further support that proposition. Although the Commander testified that he did not have a problem with anyone who complained to OSC and that it is a process he could also "avail [him]self to," such testimony sheds no light on whether he or other agency officials reported or investigated other employees for similar conduct. HT-2 at 161 (testimony of the appellant). Further, the deciding official's testimony that he considered the "likes and similars" in determining the appropriate penalty also sheds no light on whether the agency reported or initiated an investigation for the same alleged conduct when the employee was not a whistleblower. HT-1 at 38 (testimony of the deciding official). Although the investigative field officer with OPR testified that "serious misconduct" must be reported pursuant to agency policy, and the Commander testified that he

considered the appellant's actions "serious misconduct," this testimony nonetheless does not address whether a nonwhistleblower similarly would have been reported and investigated. HT-2 at 101-02, 154-55 (testimony of the investigative field officer and the Commander).

¶34 The agency had an opportunity to question the Commander about whether he reported nonwhistleblower employees and requested investigations, but it did not ask those types of questions. Thus, we find that the agency submitted little to no evidence showing that the kind of matter reported here would have otherwise been reported and investigated had the employee not been a whistleblower. When the agency fails to introduce relevant comparator evidence, such an omission may serve to tip the scales against the agency. *Whitmore*, 680 F.3d at 1374; *Semenov v. Department of Veterans Affairs*, 2023 MSPB 16, ¶ 42.

¶35 The agency's burden of proving by clear and convincing evidence that it would have reported the appellant and requested an investigation in the absence of protected whistleblowing or activity requires it to produce in the mind of the trier of fact a firm belief as to the allegations sought to be established. *Salazar v. Department of Veterans Affairs*, 2022 MSPB 42, ¶ 34; *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 28 (2011); 5 C.F.R. § 1209.4(e). Here, we are not left with the firm belief that the agency would have initiated an investigation into the appellant absent her protected whistleblowing activity. Although the Commander had some sound reasons to request an investigation, his motive to retaliate was strong, and the agency failed to present evidence showing that it reported and initiated investigations into non-whistleblower employees for similar conduct. Therefore, we find that the agency failed to prove by clear and convincing evidence that it would have reported and initiated an investigation into the appellant's conduct absent her whistleblowing. Accordingly, we grant the appellant's request for corrective action with respect to her claim of a retaliatory investigation and her subsequent suspension. *See Russell*, 76 M.S.P.R. at 328.

ORDER

¶36      We ORDER the agency to cancel the appellant's 15-day suspension effective January 8, 2018. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶37      We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶38      We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶39      No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶40      For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

¶41     This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

NOTICE TO THE APPELLANT
REGARDING YOUR RIGHT TO REQUEST
CONSEQUENTIAL AND/OR COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In addition, the Whistleblower Protection Enhancement Act of 2012 authorized the award of compensatory damages, including interest, reasonable

expert witness fees, and costs, 5 U.S.C. § 1214(g)(2), 1221(g)(1)(A)(ii), which you may be entitled to receive.

If you believe you are entitled to these damages, you must file a motion for consequential damages and/or compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE PARTIES

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D). 5 U.S.C. § 1221(f)(3). Please note that while any Special Counsel investigation related to this decision is pending, "no disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel." 5 U.S.C. § 1214(f).

## NOTICE OF APPEAL RIGHTS[14]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all

---

[14] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative receives</u> this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[15]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[15]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

_Gina K. Grippando_

Gina K. Grippando
Clerk of the Board
Washington, D.C.

**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐   1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐   2) Settlement agreement, administrative determination, arbitrator award, or order.

☐   3) Signed and completed "Employee Statement Relative to Back Pay".

☐   4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐   5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐   6) All relevant benefit election forms (e.g., TSP, FEHB, etc.).

☐   7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).

**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63).
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.  Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.  Outside earnings documentation statement from agency.
4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.  Provide forms for FEGLI, FEHBA, or TSP deductions (if applicable).
6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.